12 HAVEMEYER PLACE COMPANY, LLC *v.*
ALLAN S. GORDON
(AC 25864)

Dranginis, Flynn and McLachlan, Js.

Argued October 17, 2005—officially released January 17, 2006

*Eric D. Grayson*, for the appellant (plaintiff).

*David W. Rubin*, for the appellee (defendant).

DRANGINIS, J. This appeal concerns a mundane matter of increasing importance in today's urban society, parking spaces. The determinative issue on appeal is whether the claims for declaratory relief, equitable reformation of a lease, injunctive relief and breach of the lease are barred by the doctrines of res judicata and collateral estoppel pursuant to *12 Havemeyer Place Co., LLC* v. *Gordon*, 76 Conn. App. 377, 820 A.2d 299, cert. denied, 264 Conn. 919, 828 A.2d 618 (2003) (*Havemeyer I*), a summary process action. On appeal, the plaintiff, 12 Havemeyer Place Company, LLC, has raised numerous claims related to the judgment rendered by the trial court after the granting of the motion for summary judgment filed by the defendant, Allan S. Gordon.[1] Because the legality of the lease at issue was adjudicated in *Havemeyer I*, we affirm the judgment of the trial court.

The parties agree as to the historical facts giving rise to their ongoing dispute, which were set out in *Havemeyer I*.[2] The "dispute relates to the parties' interests in sixteen parking spaces located in an underground parking garage, which currently is owned by the plaintiff . . . ." Id., 379. "The defendant leases the sixteen parking spaces from the plaintiff for the benefit

[1] On appeal, the plaintiff raised the following claims. The court improperly (1) found that the underlying issues had been fully and finally adjudicated as a matter of law, (2) failed to find that the town of Greenwich's notice of violation and order of correction dated April 1, 2004, created new facts and issues that were not barred by the doctrines of res judicata and collateral estoppel, (3) found facts when ruling on the defendant's motion for summary judgment, (4) failed to construe all inferences against the defendant, (5) found that the action was not brought in good faith, (6) denied the plaintiff's motion for a continuance, (7) awarded the defendant excessive attorney's fees and (8) denied the plaintiff's motion for reargument. The issues related to the denial of the plaintiff's motions for a continuance and for reargument were not briefed.

[2] The parties in this action are identical to and hold the same party designations as they did in *Havemeyer I*.

of a building owned by the defendant at 71 Arch Street [in Greenwich]. . . . In 1980, John Jay Ginter Development and Construction, Inc., the then owner of both 60 Arch Street and 71 Arch Street, filed a site plan for 60 Arch Street with the town of Greenwich planning and zoning commission (commission). The commission approved the site plan, which showed a three story office retail building with a total of fifty-eight parking spaces. The preliminary site plan application, dated November 12, 1980, designated forty-eight of the spaces for 60 Arch Street and ten for 71 Arch Street. This designation, however, was deleted from the application for final site plan approval, dated December 8, 1980, which merely proposed fifty-eight spaces without any reference to 71 Arch Street. In a subsequent site plan, dated December 10, 1980, the designation of forty-eight spaces required for 60 Arch Street and the ten spaces for 71 Arch Street reappeared.

"By 1988, Greenwich Cove Associates (Greenwich Cove), a predecessor of both the plaintiff and the defendant, had acquired both 60 Arch Street and 71 Arch Street. In August, 1988, Greenwich Cove negotiated the sale of 60 Arch Street to Skanska, Inc. As a final negotiated term of the sale, Skanska, Inc., the new owner of 60 Arch Street, leased sixteen of 60 Arch Street's fifty-eight parking spaces to Greenwich Cove for use by 71 Arch Street, thereby increasing the number of spaces for 71 Arch Street as described in the site plan by six spaces. This left 60 Arch Street's tenants with the use of only forty-two parking spaces, six fewer than required by the site plan. The lease had a term of fifty years, was renewable thereafter in five year increments and was recorded in the town of Greenwich land records. It is this lease, to which neither the defendant nor the plaintiff originally were parties, which is the subject of [on-going litigation between the parties].

"In 1989, the defendant purchased 71 Arch Street from Greenwich Cove, thus obtaining the benefit of the lease, as a successor lessee. The defendant testified [in *Havemeyer I*] that the lease, which provided him with sixteen parking spaces in the 60 Arch Street garage, for his tenants at 71 Arch Street, was a major factor for the purchase. In 2000, the plaintiff, which was fully aware of the recorded lease, purchased 60 Arch Street from Skanska, Inc., and became the successor lessor. The purchase price paid by the plaintiff was less than it would have been had there been forty-eight parking spaces allocated to 60 Arch Street instead of forty-two spaces.

"The dispute involved in [*Havemeyer I*] arose when the plaintiff, as the new owner of 60 Arch Street, inquired of the town of Greenwich [town] about the recorded lease, which left 60 Arch Street with forty-two parking spaces, and about the possible conflict of the lease with the site plan, which required forty-eight spaces for 60 Arch Street. In the preceding twelve years, no tenant, neighbor or predecessor in title of either building had complained to any zoning authority of any site plan violation as it related to parking. The town's zoning enforcement officer responded to the plaintiff's inquiry by stating that he believed there was a violation of a zoning regulation. . . .

"[I]n January, 2001, the plaintiff rejected the defendant's tender of rent and informed the defendant by letter that it was of the opinion that the lease was void or voidable because it violated the site plan. In February, 2001, in a separate action, the defendant in this case instituted an action against the plaintiff in this case seeking declaratory judgment as to the enforceability of the lease, injunctive relief and damages. [The defendant here] also claimed damages for tortious interference with his leases with his tenants, which leases granted the tenants the right to use the parking spaces

at 60 Arch Street. [He] withdrew his application for a temporary restraining order against [the plaintiff here] in exchange for [the latter's] agreement to seek a variance of the site plan. The zoning board of appeals denied the application for a variance because a hardship was not demonstrated, but the plaintiff in this case did not appeal to the Superior Court from the denial.

"After the variance was denied, the zoning enforcement officer cited the plaintiff for the reduction of on-site parking as a violation of § 6-16 of the municipal building code regulations and directed the plaintiff to restore the forty-eight parking spaces as provided in the site plan.

"Subsequently, the plaintiff served the defendant with a notice to quit and then brought the summary process action for immediate possession of the sixteen parking spaces, which [was] the subject of [*Havemeyer I*]. The defendant asserted three special defenses to the summary process action. He alleged that the lease was not illegal or void, that equity barred the plaintiff's claim 'by virtue of, among other things, the facts set forth at length in [his] Complaint dated February 14, 2001, in the action [*Gordon* v. *Havemeyer Place Co., LLC*, Docket No. CV 01-01844544S] and the doctrines of equitable estoppel, laches, unclean hands and unjust enrichment,' and that the plaintiff failed to state a claim on which relief could be granted. The court granted judgment in favor of the defendant." *12 Havemeyer Place Co., LLC* v. *Gordon*, supra, 76 Conn. App. 380–83.

The plaintiff appealed to this court. The precise question addressed in *Havemeyer I* was "whether a lessor, on the ground of illegality, may gain possession of leased premises from a lessee solely on the ground that the recorded lease varied the requirements of a site plan, when the lessee has not breached any covenant of the lease and the town has not cited the lessee for

a violation or ordered the lessee to take any corrective action." Id., 383. This court held that given the particular facts of the case, the plaintiff was not entitled to possession because the "violation of the zoning laws with regard to the parking required by the site plan was not sufficient to render the lease illegal as against public policy." Id., 392.

On April 15, 2004, the plaintiff caused the present action to be served on the defendant. The verified complaint alleged facts consistent with the preceding history, as well as that the town's zoning enforcement officer had issued notice of a violation against the defendant and 71 Arch Street on the basis of the lease and the use of the six parking spaces at 60 Arch Street. Furthermore, the plaintiff alleged that paragraph five of the lease requires the defendant to comply with "all statutes, ordinances, rules, orders, regulations and requirements of the federal, state and city government and of any and all other departments and bureaus applicable to the [p]arking [s]paces." In addition, the plaintiff alleged that the defendant must vacate the six parking spaces to restore the approved conditions of the site plan.

The verified complaint also alleged that on April 2, 2004, the plaintiff gave written notice to the defendant that he must comply with the town's notice of violation and vacate the parking spaces so that the use of the building will comply with the site plan.[3] The plaintiff

---

[3] The letter from the town to the defendant was attached to the verified complaint as exhibit A and stated: "The Planning and Zoning Commission (PZC) approved site plan No. 652 for 60 Arch Street for the construction of a commercial building and fifty-eight (58) parking spaces. Of the fifty-eight (58) spaces forty-eight (48) were required for zoning code compliance.

"Without notice to or approval from the PZC the then owner of 60 Arch Street leased sixteen (16) of the fifty-eight (58) spaces to Greenwich Cove Inc. then located at 71 Arch Street. This agreement, reducing the parking available to the tenants of 60 Arch Street from forty-eight (48) to forty-two (42) spaces created a zoning violation.

"Our office became aware of this condition in 2001 and cited the owner of 60 Arch Street for that violation. The matter was heard as an appeal to

also informed the defendant that if he did not vacate the parking spaces voluntarily, the plaintiff would commence the present action to evict him from the parking spaces or invoke equity to reform the lease. The plaintiff also alleged that the defendant, through counsel, had informed it that the defendant would not vacate the parking spaces voluntarily or comply with the order from the zoning enforcement officer.

The complaint further alleged that the plaintiff was unable to obtain a zoning variance because the issue concerning the parking spaces was self-created and that the commission cannot vary its regulations with respect to the parking spaces at 60 Arch Street. In count one of the verified complaint, the plaintiff alleged that bona fide and substantial questions exist as to the legality of the lease and whether the defendant must vacate six of the parking spaces to comply with the town's zoning order. The plaintiff prayed that the court declare the lease illegal as to six parking spaces.

Count two of the verified complaint alleged that when Greenwich Cove and Skanska, Inc., entered into the lease, they did so under a mutual mistake that the lease was legal or, in the alternative, that they knew the lease was illegal but nonetheless entered into it. Neither Greenwich Cove nor Skanska, Inc., contemplated or intended that the lease would compromise the use of 60 Arch Street so that it would be used in a manner that violated the municipal code. The property at 60

the Planning and Zoning Board of Appeals (PZBA) and later to the Superior Court. Relief from this violation was not forthcoming by either the PZBA or the Court. Hence, the violation remains.

"By this letter we are directing you to vacate the six (6) aforementioned parking spaces to restore the approved conditions of the site plan. Your use of those spaces is a violation of the Greenwich Municipal Code Building Zone Regulations. . . ."

In response to a question from the court at oral argument on the motion for summary judgment, counsel for the defendant conceded that the quoted letter was not a cease and desist order.

Arch Street is in violation of the town code because it has too few parking spaces for its tenants and their invitees. The plaintiff also alleged that the needs of the defendant's tenants would be better served by use of a municipal parking facility adjacent to 71 Arch Street rather than by 60 Arch Street, which is across the street from it. The plaintiff alleged that if the lease is not reformed, it would suffer an extreme hardship in that a portion of 60 Arch Street would have to be torn down or the use of the building changed substantially.

In count three, the plaintiff alleged that it has no adequate remedy at law and prayed that the court enjoin the defendant from using six parking spaces at 60 Arch Street. Without the injunction, the plaintiff alleged, it will suffer irreparable harm. In count four, the plaintiff claimed that the defendant was in breach of the lease by failing to comply with the zoning order and prayed for attorney's fees pursuant to the lease.

In response to the verified complaint, the defendant filed a motion for summary judgment and attorney's fees. He argued that in *Havemeyer I*, the plaintiff sought to void and to terminate the lease on the theory that it was illegal and unenforceable. The defendant noted that this court expressly rejected that theory. In this action, the defendant continued, the plaintiff seeks to relitigate the same issues. As a matter of law, the defendant contended, the relief sought by the plaintiff in this action, i.e., to terminate the lease, was the same relief sought in *Havemeyer I*. The action, the defendant therefore argued, is barred by the doctrines of res judicata and collateral estoppel. The plaintiff opposed the motion for summary judgment.

The motion for summary judgment was heard, coincidentally, by the same trial judge who had dismissed the summary process action in *Havemeyer I*. In granting the defendant's motion for summary judgment, the court

stated, "I'm going to grant the motion for summary judgment for the reasons stated by counsel in the memorandum and also for the reasons stated here. I think that the real problem, the only way to solve the problem is by the [plaintiff] either changing the use of the property, getting a change in the square footage, getting less parking spaces per square foot. I think that's something that the [plaintiff] has the obligation to do. . . . By now suggesting that a letter being sent by the town of Greenwich changes the whole complexion of the decision made by this court, changes the decision made by the Appellate Court, in effect, the decision made by the Supreme Court in denying any further hearing on it, I think, it's an insult to the judicial system, quite frankly. And I don't think it's fair. I'm also going to award attorney's fees."

Thereafter, the court held a hearing on the matter of attorney's fees and awarded the defendant $9045 in attorney's fees. The plaintiff filed a motion to reargue the motion for attorney's fees, which the court denied. The plaintiff appealed from the judgment. The essence of the plaintiff's multiple claims on appeal is that the court improperly (1) granted the defendant's motion for summary judgment, (2) found that the plaintiff had commenced the action in bad faith and (3) awarded attorney's fees. We disagree.

I

The plaintiff first claims that the court improperly granted the defendant's motion for summary judgment because certain facts that were not present in *Havemeyer I* were alleged in the verified complaint and, thus, had to be tried. More specifically, it argues in its brief that *Havemeyer I* did not consider "whether a lessor, on the ground of illegality, may gain possession of the leased premises from a lessee solely on the ground that the recorded lease varied the requirements of a site

plan, when the lessee has breached a specific covenant of the lease and/or *the town has cited the lessee for a violation and has ordered the lessee to take any corrective action.*" (Emphasis added.) Compare *12 Havemeyer Place Co., LLC* v. *Gordon,* supra, 76 Conn. App. 383. We are not persuaded.

The plaintiff has alleged that the town has ordered the defendant to vacate six parking spaces and that the defendant is in breach of the lease because it allegedly has violated the municipal code.[4] The plaintiff contends, therefore, that the allegations of the verified complaint cannot be collaterally estopped or barred by the doctrine of res judicata. The plaintiff also claims that in *Havemeyer I,* this court distinguished the facts there from those in *Sippin* v. *Ellam,* 24 Conn. App. 385, 388–

---

[4] The relevant sections of the lease provide: "WHEREAS, pursuant to requirements of the Planning and Zoning Commission of Greenwich, Connecticut, ten (10) parking spaces at the [60 Arch Street] Premises must be set aside for the use and benefit of tenants of 71 Arch Street; and WHEREAS, the parties hereto wish to execute this Lease and provide six additional parking spaces upon the Premises for the tenants of 71 Arch Street . . . .

"NOW, THEREFORE, the parties hereto agree as follows:

"1. Lease of Parking Spaces. Lessor [formerly Skanska, now the plaintiff] hereby leases to Lessee [formerly Greenwich Cove, now the defendant] the sixteen (16) parking spaces at the Premises . . . on the terms and conditions set forth herein. . . .

"5. Requirements of Law. The manner of use of the Parking Spaces by Lessee, the tenants of 71 Arch Street and their agents, employees, or invitees shall comply with, and Lessor, in other respects, shall comply with, all statutes, ordinances, rules, orders, regulations and requirements of the federal, state and city government and of any and all other departments and bureaus applicable to the Parking Spaces. . . .

"16. This lease may not be terminated without the written consent of both Lessor and Lessee." (Internal quotation marks omitted.) *12 Havemeyer Place Co., LLC* v. *Gordon,* supra, 76 Conn. App. 383–85.

Paragraph five of the lease was construed in *Havemeyer I.* "It is noted that paragraph five requires the *lessee,* its agents, employees or invitees to comply with the *'manner of use* of the [p]arking [s]paces' and the *lessor 'in other respects'* to comply with city regulations. . . . Neither the plaintiff, nor the defendant argue that the lease imposed a requirement on the lessee to abide by city regulations." (Emphasis in original.) *12 Havemeyer Place Co., LLC* v. *Gordon,* supra, 76 Conn. App. 384–85 n.13.

92, 588 A.2d 660 (1991). In short, the plaintiff argues that the relevant facts alleged now, i.e., that the defendant is in violation of the municipal code, bring the issue within the holding of *Sippin*. The plaintiff has conceded, however, that the town has not issued a cease and desist order as to the defendant's use. See General Statutes § 8-12.[5] Because the town has not brought an action to enforce the alleged zoning violation,[6] the question here is exactly the one raised in *Havemeyer I*.

Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Our review of the court's decision to grant the motion for summary judgment is plenary. *Greenwich Hospital* v. *Gavin*, 265 Conn. 511, 519, 829 A.2d 810 (2003). "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) Id. "The test is whether a party would be entitled to a directed verdict

[5] General Statutes § 8-12 provides in relevant part: "If any building . . . has been used, in violation of any . . . ordinance . . . any official having jurisdiction . . . may institute an action . . . to prevent such unlawful . . . use . . . . Any person who, *having been served with an order* to discontinue any such violation . . . or *having been served with a cease and desist order* with respect to a violation . . . shall be subject to a civil penalty . . . ." (Emphasis added.)

[6] This court has held that a cease and desist order is not an action to enforce. *Benson* v. *Zoning Board of Appeals*, 89 Conn. App. 324, 334–35, 873 A.2d 1017 (2005). "Although the enforcement provision, § 8-12, authorizes zoning enforcement officers to issue cease and desist orders, such orders are preliminary in nature. In fact, a municipality will often institute a civil action to enforce a cease and desist order. . . . Because an order requires a civil action to be enforced, we hesitate in the absence of evidence of legislative intent to ordain it an action to enforce in itself." (Citation omitted.) Id., 334; see also *Greenwich* v. *Kristoff*, 180 Conn. 575, 578–79, 430 A.2d 1294 (1980).

on the same facts." (Internal quotation marks omitted.) *Fernandez* v. *Standard Fire Ins. Co.*, 44 Conn. App. 220, 222, 688 A.2d 349 (1997). "The facts at issue [in the context of summary judgment] are those alleged in the pleadings." (Internal quotation marks omitted.) *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 315, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000). Res judicata or collateral estoppel, if raised, may be dispositive of a claim and, thus, summary judgment may be appropriate. *Bouchard* v. *Sundberg*, 80 Conn. App. 180, 186, 834 A.2d 744 (2003).

The defendant based his motion for summary judgment on the doctrines of res judicata and collateral estoppel, arguing that both apply. "Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . . prevents a party from relitigating an issue that has been determined in a prior suit. . . . Both doctrines protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation . . . and express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . .

"Res judicata, or claim preclusion, is [however] distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action . . . between the same parties or those in privity with them, upon the same claim. . . . In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. . . .

"To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 554–55, 848 A.2d 352 (2004).

There is no question that the same parties were adverse to one another in *Havemeyer I*. We must therefore determine whether the claim that is raised in the present action or the issues raised in this action were litigated and decided previously. We conclude that the specific claim, the legality of the lease,[7] and the issues surrounding that claim were litigated and decided in *Havemeyer I*, and that the allegations of the complaint do not bring it within *Sippin* v. *Ellam*, supra, 24 Conn. App. 385.

*Havemeyer I* clearly distinguished the facts of *Sippin* from the facts here. The distinction rested on the difference between a zoning ordinance, as in this case, and a restrictive covenant in a deed, as in *Sippin*.[8] The trial

---

[7] "The plaintiff claims that the lease was illegal *ab initio*. Specifically, it argues that the terms of the lease expressly and illegally violated the site plan and, therefore, the lease is unenforceable." *12 Havemeyer Place Co., LLC* v. *Gordon*, supra, 76 Conn. App. 383.

[8] In *Sippin*, "[t]he plaintiff lessor's deed to the leased real estate contained a restrictive covenant prohibiting any commercial use, but the defendant tenant was unaware of that restriction in the plaintiff's deed. . . . Approximately one year after the execution of the lease, the local zoning enforcement agency ordered the defendant tenant to cease and desist the operation of his business because the premises were located in a residential zone." (Citation omitted; internal quotation marks omitted.) *12 Havemeyer Place Co., LLC* v. *Gordon*, supra, 76 Conn. App. 386.

court in *Sippin* "specifically found that [t]here is no question but that the lease was illegal pursuant to the restrictive covenant against any commercial use. It is therefore clear that such an undertaking is illegal and voids the agreement." (Internal quotation marks omitted.) *12 Havemeyer Place Co., LLC* v. *Gordon*, supra, 76 Conn. App. 386–87. The trial court in *Sippin* continued, stating that "[t]he thing to be done here and which was prohibited by the covenant, was the suffering of the premises in question to be used for commercial purposes." (Internal quotation marks omitted.) Id., 387.

This court affirmed the judgment of the trial court in *Sippin* on the basis of the restrictive covenant; id.; but noted that the *Sippin* lease was illegal pursuant both to the operative zoning law and the restrictive covenant. This court's decision in *Sippin* was not dependent on a violation of the zoning regulations and therefore was inapplicable to *Havemeyer I*. Id. This court nonetheless reasoned that *Sippin* "involved the illegality of a lease that nullified a recorded restrictive covenant in a deed and [that *Havemeyer I*] involves the alleged illegality of a lease that nullified a zoning regulation. A restrictive covenant in a deed runs with the land and restrains the use to which land may be put in the future, as well as the present, and may affect its value. . . . Unlike a zoning regulation, for which there is a procedure for a variance from the regulation, the covenant, if not against public policy, remains in effect, indefinitely, in accordance with its terms." Id., 388.

In *Havemeyer I*, the plaintiff argued that the lease was illegal in order to obtain possession of the subject parking spaces. Furthermore, at the time, the zoning officer had cited the plaintiff for having violated the site plan. Id., 382. This court reasoned that "[g]enerally, agreements contrary to public policy, that is those that negate laws enacted for the common good, are illegal

and therefore unenforceable"; id., 389; and stated that the issue was whether the site plan at issue "is a zoning regulation involving the common good or a regulation that has as its overriding purpose a private goal that does not contravene the common good."[9] Id. This court found that the overriding purpose was a private goal; id., 392; and concluded that because the plaintiff could obtain a variance, the subject lease was not illegal. Id., 391–92.

"Parties may bind themselves to a contract that calls on its face for a use of property that violates the zoning laws because, due to the possibility of obtaining a variance, such a bargain is not against public policy or public morals. . . . A lease providing for a use of premises which is prohibited by the zoning law is not necessarily illegal where it appears that an appeals board has the authority to permit a variance." (Citations omitted; internal quotation marks omitted.) Id., 390–91. "A lease is not necessarily void if, reasonably, the prohibition can be made legal through administrative or judicial action. . . . A lease does not have an unlawful purpose if the zoning laws incorporate a procedure by which a variance from the letter of the law may be obtained." (Citation omitted.) Id., 390.

This court applied the law to the facts of *Havemeyer I*, which we are reminded are the same ones at issue here. Pursuant to an agreement between the parties,

---

[9] "The basic purpose of zoning is to restrict certain classes of buildings and uses to certain localities within the community. . . . Zoning divides a community into geographical zones, such as residential, business and industrial, to ensure that the uses on the individual properties within the zones are compatible with each other. A site plan, on the other hand, is a plan for the proposed use of a particular site, indicating all of the information required by the regulations for that site. . . . A site plan may be modified at the discretion of a planning and zoning commission to provide for a lesser number of parking spaces than the number required by the zoning regulations." (Citations omitted.) *12 Havemeyer Place Co., LLC* v. *Gordon*, supra, 76 Conn. App. 390.

the plaintiff applied to the zoning board for a variance, which admittedly the plaintiff did not want. The application was denied. The plaintiff opted not to challenge the denial in the courts because it did not file an appeal.[10] Id., 391. "The plaintiff cannot rely on the alleged illegality at the time of the execution of the lease because the lease could have been made legal reasonably at the time of its execution through administrative or judicial action. [This court did] not know the contents of the plaintiff's application for a variance or the specific reasons for the denial, other than the terse phrase, lack of hardship. [This court could] not predict, therefore, whether a second application for a variance is possible, or if so, whether it would be granted. [T]he construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference. . . . We cannot conclude, therefore, with any certainty, without a judicial determination, whether the variance should have been granted." (Citation omitted; internal quotation marks omitted.) Id., 391–92.

For the foregoing reasons, we conclude, therefore, that there were no genuine issues of material fact and, as a matter of law, that the court properly granted the defendant's motion for summary judgment.

## II

The plaintiff's second claim is that the court improperly determined that there was no genuine issue of material fact as to whether the plaintiff had brought the present action in bad faith. The crux of the plaintiff's argument is that bad faith is a question of fact that is not susceptible to a motion for summary judgment. As a rule, whether bad faith is established is a question of

---

[10] "The plaintiff's failure to [file] an appeal was not surprising because its self-interest did not lie in obtaining a variance or in success on appeal." 12 *Havemeyer Place Co., LLC* v. *Gordon,* supra, 76 Conn. App. 391 n.18.

fact. See *Warner* v. *Konover*, 210 Conn. 150, 156, 553 A.2d 1138 (1989). On the facts of this case, however, we do not agree with the claim as a matter of law because the claims and issues were decided in *Havemeyer I.*

"It is the burden of the party asserting the lack of good faith to establish its existence . . . ." *Habetz* v. *Condon*, 224 Conn. 231, 237 n.11, 618 A.2d 501 (1992). "Any adverse party shall at least five days before the date the motion [for summary judgment] is to be considered on the short calendar file opposing affidavits and other available documentary evidence." Practice Book § 17-45. "Supporting and opposing affidavits shall be made on personal knowledge, shall *set forth such facts as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to matters stated therein. . . ." (Emphasis added.) Practice Book § 17-46. The defendant claims that the affidavit of John Fareri, a managing member of the plaintiff, submitted in opposition to the motion for summary judgment is insufficient to raise a genuine issue of fact. Our review of the affidavit reveals that Fareri attested, in part, in paragraph four of his affidavit, "I tested the validity of the lease in good faith by instituting legal proceedings." That statement is a conclusion, not a statement of fact based on personal knowledge. Furthermore, the affidavit is replete with admitted hearsay,[11] conclusions and argument. The affidavit does not contain admissible evidence as required by our rules of practice and is therefore insufficient to oppose a motion for summary judgment.

"[T]he party opposing [summary judgment] . . . must provide an evidentiary foundation to demonstrate

---

[11] Fareri attested in part in paragraph five of his affidavit: "I understand that [the defendant] (*via hearsay*) claims that a secretary for one of his tenants claims that [the plaintiff] told her that rights to parking had been 'suspended.' I deny that anyone connected with [the plaintiff] made such a statement . . . ." (Emphasis added.)

the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of a case. . . . A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Citation omitted; internal quotation marks omitted.) *Anderson* v. *Schoenhorn*, 89 Conn. App. 666, 670, 874 A.2d 798 (2005). "Moreover, *mere conclusions* are insufficient as evidence which would be inadmissible upon the trial, such as hearsay." (Emphasis added.) *Farrell* v. *Farrell*, 182 Conn. 34, 39, 438 A.2d 415 (1980).

A similar issue regarding bad faith was decided by our Supreme Court in *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 618 A.2d 506 (1992). In that case, the court stated: "The plaintiff further claims that bad faith is a factual question and as such it is not appropriately determined by a motion for summary judgment. The plaintiff relies on cases in which we have held that issues of motive, intent and good faith are not properly resolved on a motion for summary judgment. See, e.g., *Town Bank & Trust Co.* v. *Benson*, 176 Conn. 304, 309, 407 A.2d 971 (1978); *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 376, 260 A.2d 596 (1969). We have also held, however, that even with respect to questions of motive, intent and good faith, a party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact. See, e.g., *Connell* v. *Colwell*, [214 Conn. 242, 251, 571 A.2d 116 (1990)] (summary judgment granted in issue of fraudulent concealment); *Dubay* v. *Irish*, 207 Conn. 518, 534, 542 A.2d 711 (1988) (summary judgment granted in issue of wilful, wanton or reckless conduct); *Multi-Service Contractors, Inc.* v. *Vernon*, 193 Conn. 446, 452, 477 A.2d 653 (1984) (*summary judgment granted on questions of good faith* and wilful misconduct)." (Emphasis added.) *Wadia Enterprises, Inc.* v. *Hirschfeld*, supra, 250. In

this case, the claims alleged by the plaintiff center on the legality of the subject lease. That question was decided in *Havemeyer I*, an action to which the plaintiff was a party. See part I. "[T]he plaintiff is not entitled to possession because we hold that the violation of the zoning laws with regard to the parking required by the site plan was not sufficient to render the lease illegal as against public policy." *12 Havemeyer Place Co., LLC* v. *Gordon*, supra, 76 Conn. App. 392.

"A lease is a contract." (Internal quotation marks omitted.) *Central New Haven Development Corp.* v. *La Crepe, Inc.*, 177 Conn. 212, 214, 413 A.2d 840 (1979). "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Internal quotation marks omitted.) *Warner* v. *Konover*, supra, 210 Conn. 154. " 'Good faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing." General Statutes § 42a-3-103 (a) (4). "[B]ad faith is defined as the opposite of good faith, generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties . . . . [B]ad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." (Internal quotation marks omitted.) *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 171, 530 A.2d 596 (1987).

When it ruled on the defendant's motion for summary judgment, the court stated: "The court has already decided this case; this court has. By now suggesting that a letter being sent by the town of Greenwich changes the whole complexion of the decision made by this court, changes the decision made by the Appellate Court, in effect the decision made by the Supreme Court in deny-

ing any further hearing on it, I think it's an insult to the judicial system, quite frankly." In other words, the court concluded that this action, in which the plaintiff was represented by counsel, violated the public policy purposes of res judicata and collateral estoppel. See part I. We agree and conclude, therefore, that the court properly found that the action was not brought in good faith and rendered summary judgment accordingly.

### III

The plaintiff's third claim is that the amount of attorney's fees that the court awarded the defendant is excessive. We disagree.

Ordinarily, the prevailing party is not entitled to attorney's fees. "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . The rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights. . . . [Our Supreme Court] also has recognized a bad faith exception to the American rule, which permits a court to award attorney's fees to the prevailing party on the basis of bad faith conduct of the party or the other party's attorney. . . . [W]e review the trial court's decision to award attorney's fees for abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 178, 851 A.2d 1113 (2004).

In ruling on the defendant's motion for summary judgment, the court stated that it would award the defendant attorney's fees. The defendant sought $9045 and filed an affidavit with copies of invoices for attorney's fees. The affidavit reflected, among other things, the services

provided, the hourly rate of the two attorneys who performed services for the defendant and the amount of time each had dedicated to this matter. The court awarded the defendant the full amount of fees requested. The plaintiff claims that the amount was unreasonable "given the fact that between 50 percent and 60 percent of the work billed for had been done in connection with other prior cases between the parties and, thus, there should have been a substantial reduction in the attorney's hours claimed." Most particularly, the plaintiff referred to *Havemeyer I* and argued that the defendant's counsel simply cut text from his memoranda of law in that case and pasted it into his memoranda of law in the present case.

Our Supreme Court has stated that "res judicata should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) *to provide repose by preventing a person from being harassed by vexatious litigation.*" (Emphasis added; internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 422, 752 A.2d 509 (2000). It is not surprising that portions of motions and memoranda of law filed by the defendant are similar to motions and memoranda filed in *Havemeyer I*. The facts are the same. For situations such as the one presented here, the doctrines of res judicata and collateral estoppel have developed. We are mindful, however, that the issues of res judicata and collateral estoppel were not part of *Havemeyer I*. Those issues required research pertinent to this action only.

"[W]hen a court is presented with a claim for attorney's fees, the proponent must present to the court . . . a statement of the fees requested and a description of services rendered. Such a rule leaves no doubt about

the burden on the party claiming attorney's fees and affords the opposing party an opportunity to challenge the amount requested at the appropriate time." *Smith* v. *Snyder*, 267 Conn. 456, 479, 839 A.2d 589 (2004). The court is permitted "to assess the reasonableness of the fees requested using any number of factors, including its general knowledge of the case, sworn affidavits or other testimony, itemized bills and the like. . . . [T]he value of [reasonable attorney's fees] is based on many considerations." (Internal quotation marks omitted.) Id., 480.

On the basis of our review of the record and briefs, the transcript and the affidavit of the defendant's counsel, we conclude that the court did not abuse its discretion in awarding the defendant the attorney's fees requested, as the action was barred by the doctrines of repose.

The judgment is affirmed.

In this opinion the other judges concurred.