## DOUBLE G.G. LEASING, LLC *v.* UNDERWRITERS AT LLOYD'S, LONDON
### (AC 29998)

DiPentima, Robinson and Alvord, Js.

Argued April 28—officially released August 11, 2009

*William A. Conti*, with whom, on the brief, was *Gregory T. Nolan*, for the appellant (plaintiff).

*Lawrence A. Dugan*, pro hac vice, with whom was *Stephen O. Clancy*, for the appellee (defendant).

*Opinion*

ROBINSON, J. The plaintiff, Double G.G. Leasing, LLC, appeals from the summary judgment rendered by the trial court in favor of the defendant, Underwriters at Lloyd's, London. The plaintiff's two count complaint alleged breach of contract and breach of the implied covenant of good faith and fair dealing. On appeal, the plaintiff claims that the court improperly concluded that there were no genuine issues of material fact as to

whether (1) Carl Glatzel, Jr., the plaintiff's sole member, owner and manager, had filed federal and state income tax returns and had failed to provide them to the defendant, and (2) the plaintiff's submission to the examination under oath satisfied the substantial compliance standard. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history, taken from the court's memorandum of decision granting the defendant's motion for summary judgment, are relevant to our consideration of the plaintiff's claims. "At all relevant times . . . Glatzel . . . was the sole member, owner and manager of the [plaintiff]. On February 25, 2005, the [plaintiff] purchased real property in New Milford . . . from John R. Duda and the Judith H. Duda Living Trust (collectively 'Duda') on which was situated a vacant, two-family residential structure. The purchase price was $550,000. The purchase was financed largely by [John] Duda and secured by an open end mortgage on the property. The [plaintiff] obtained an insurance policy from the defendant that insured the [plaintiff] against, inter alia, physical loss or damage to the property by fire for the period of March 19, 2005, to September 19, 2005. Pursuant to the policy, the defendant agreed to provide coverage for the structure with a policy limit of $360,000 on a replacement cost basis. On April 24, 2005, less than five weeks after the commencement of the policy period, the building was destroyed by fires of incendiary origin that were ignited at two separate locations at the rear of the building with the use of flammable liquid accelerant. . . .

"By letter dated April 19, [2006], the defendant notified the plaintiff's attorney that it would require Glatzel's examination under oath and production of documents at the examination. The plaintiff's attorney requested three continuances of the examination. After

three more letters from the defendant's attorney, Glatzel appeared for the examination on December 7, 2006. He answered many questions but stated that he did not know the answers to others and did not produce many of the requested documents at that time. He produced some documents subsequent to his examination. However, though he admitted at his examination that he had filed personal income tax returns, he never produced them."

The complaint, filed April 23, 2007, alleged that the plaintiff's direct loss was approximately $350,419.99 and that the plaintiff had substantially and materially fulfilled all terms, conditions and requirements of the policy but that the defendant had not paid the loss and damage in accordance with the terms and conditions of the policy in breach of the insurance contract. The complaint further alleged that the defendant had issued excessive requests for records and documents during the course of its investigation of the fire for the purpose of unfairly impeding the plaintiff's right to receive benefits that it reasonably expected to receive under the contract and, therefore, had breached the implied covenant of good faith and fair dealing.

The defendant moved for summary judgment on September 26, 2007, on the ground that the action was barred because the plaintiff failed to comply with essential conditions of the contract concerning the insured's duties after loss relating to the production of documents and records. The court determined that the defendant's attorney had submitted a written request to the plaintiff's attorney by letter dated April 19, 2006, and made a demand that Glatzel and his father, Carl Glatzel, Sr., submit to examinations under oath on May 4, 2006, and that they bring certain documents with them on that date, including, but not limited to: "All state and federal tax returns, whether individual, joint, several, corporate, partnership or business filed by you or on your

behalf or on behalf of any entity or business which employed you or in which you own any ownership interest (excluding an ownership interest solely by reason of stock ownership in a corporation which is publicly traded on a recognized stock exchange) for the period which includes calendar years 2001 through the present. . . . All financial statements, books of account, general ledgers or other financial documents prepared or created by you or any other person or entity which pertain to your financial condition . . . ."[1]

The requested examination of Carl Glatzel, Jr., was rescheduled numerous times at the request of the plaintiff's attorney, delaying its commencement from May 5 to December 7, 2006. During the examination, the following colloquy took place:

"[The Defendant's Counsel]: So, is it your testimony that all of the income that Twin Eagles Construction [a construction concern that Glatzel owns] has earned since at least 2001—

"[The Witness]: To the best of my knowledge, yes.

"[The Defendant's Counsel]:—has been recorded on tax returns that were filed by you personally or by Twin Eagles Construction?

"[The Witness]: I didn't file, my accountant takes care of all the paperwork, I go out and do the jobs. When it comes to paperwork, I'm lost.

"[The Defendant's Counsel]: You signed tax returns?

"[The Witness]: Oh, yeah.

---

[1] The defendant also requested other information, including: "All documents, including loan agreements, payment books, statements of account, monthly statements or other similar materials which refer or relate to any mortgage, loan, credit card balance or other indebtedness owed by yourself, or by any corporation, partnership, business or other entity which employed you or in which you own an ownership interest . . . . All documents which relate to [the plaintiff]. . . ."

"[The Defendant's Counsel]: You have filed taxes?

"[The Witness]: Yes. To the best of my knowledge— I'll call him and have him send the stuff to you, but you're asking for numbers I don't have, you know what I'm saying? I don't know exact numbers to tell you, because I don't know what they are. . . .

"[The Defendant's Counsel]: Typically, how much do you pay in income tax each year?

"[The Witness]: Numbers, again. I don't know what it is.

"[The Defendant's Counsel]: . . . Have you paid income tax in each of the last five years?

"[The Witness]: I don't know what was paid. I don't know how much, if that's what you're getting at. I don't have a number.

"[The Defendant's Counsel]: My question was—

"[The Witness]: To the best of my knowledge, yes. I heard the question.

"[The Defendant's Counsel]: To the best of your knowledge, you have paid income taxes, you just don't know how much money.

"[The Witness]: Right."

The topic also came up later during the same examination:

"[The Defendant's Counsel]: That brings us exactly to the item two on exhibit A, which reads that you were requested to produce all financial statements, books of account, general ledgers or other financial documents prepared or created by you which pertain to your financial condition and that of any other corporation, partnership, entity or business which employed you or in which you own an ownership interest . . .

"[The Witness]: I didn't read all that.

"[The Defendant's Counsel]: . . . from January, 2001, to the present.

"[The Witness]: I thought he meant [the plaintiff].

"[The Defendant's Counsel]: No, that's . . . let me just clarify, it reads specifically, which pertain to your financial condition or that of any other corporation, partnership, entity or business which employed you in which you own an ownership interest.

"[The Witness]: Well, I misunderstood it.

"[The Defendant's Counsel]: Well, let me clarify that the request is directed to you, sir, as hundred percent owner of [the plaintiff], president, stockholder, controlling person.

"[The Witness]: [The plaintiff] is easy. There's like a hundred dollars in the account. That thing hasn't done nothing.

"[The Defendant's Counsel]: Right. So, I'm speaking to you, personally.

"[The Witness]: But I just come through that. That's why I should have read the whole damn thing, but I didn't.

"[The Plaintiff's Counsel]: We will provide you with . . .

"[The Witness]: Absolutely, I can provide that.

"[The Defendant's Counsel]: The problem, and let me get . . .

"[The Plaintiff's Counsel]: I know.

"[The Defendant's Counsel]: Let me cut to the chase.

"[The Witness]: I wish you could.

"[The Plaintiff's Counsel]: Right.

"[The Defendant's Counsel]: [The plaintiff's attorney], I'm sure, understands that the record right now is not acceptable.

"[The Plaintiff's Counsel]: We understand. We'll provide you with additional information.

"[The Defendant's Counsel]: And the opportunity to request the witness again?

"[The Plaintiff's Counsel]: Absolutely, we'll make ourselves available."

The defendant's attorney sent a request for additional documentation from the plaintiff on December 18, 2006.[2] In response, Glatzel provided the defendant with copies of certain documents.[3] He did not provide the

---

[2] The defendant requested information, including: "All receipts, invoices, billings and other documents pertaining to work performed at the subject structure prior to [or] after the subject reported fire. . . . A copy of the plot plan, survey and drawings obtained by or provided to your client concerning the use of the subject land parcel and the work created from January 1, 2003 to the current date. . . . Closing statements and other documents pertaining to the sale of [Glatzel's residence] at 26 Nutmeg Place Lane near Milford, Connecticut and the purchase of his North Carolina residence."

[3] Glatzel provided the defendant with copies of: "[T]he mortgage deed and security agreement for the subject property; correspondence from the New Milford town attorney and fire marshal regarding the fire investigation; two changes of statutory agent for the plaintiff filed with the secretary of [the] state; two interim notices of change of member/manager for the plaintiff filed with the secretary of [the] state; an assignment of membership interest of the plaintiff; a letter from the secretary of [the] state, dated December 3, 2006, and 'Acceptance of Business Filing,' for the plaintiff; a business information verification report; various correspondence from Eastland Claim Service, Inc., [the] defendant's fire investigators, one enclosing a copy of [the] preliminary statement of the actual cash value of items claimed lost in the fire; invoice from Twin Eagles Construction, LLC; a bill from Plimpton & Hills, dated January 6, 2005, for materials sold to Jeff Schmidt; a list of items entitled 'Jeff Schmidt'; a bill from Cherry Hill Construction to Twin Eagles Construction; a bill from Cherry Hill Construction for demolition of the house and site clean up; various correspondence from the Bozelko law firm; a Consent to Search & Examination of Evidence, signed by Glatzel for the Connecticut department of public safety; correspondence from the Bozelko law firm to Richard Palmieri of Eastland Claim Service, Inc., enclosing (1) documents concerning the purchase of 366 Danbury Road, New Milford, Ct. by the plaintiff, (2) documents concerning the creation of the

defendant with copies of federal or state tax returns filed by himself or on behalf of the plaintiff. At oral argument on the motion for summary judgment on February 1, 2008, the court asked the plaintiff's attorney why he had not provided the defendant with information about profit loss statements and the plaintiff's taxes. The plaintiff's attorney replied: "Those documents don't exist. I think the most important thing, and the most concrete thing we can talk about, is the tax situation. And, I think I can represent [that] there is an investigation going on, and my client is resolving his tax issues. I mean, there's no doubt about that. There's no intentional—and I think that [the defendant's attorney] acknowledged this—there's no intentional, you know, conduct to withhold these documents from the [defendant]. They just—they don't exist. Those issues are being addressed right now by the Internal Revenue Service [IRS], and that's really the core issue in front of the court today. The number one documents that they demanded were the IRS documents, and, you know, they don't exist at the present time."

The plaintiff's attorney later reiterated that the requested documents did not exist, stating: "That's

plaintiff; and (3) a list of improvements made to the property since the plaintiff's purchase; and appraisal of replacement cost of the property; a completed questionnaire and diagrams provided to United Cleaning regarding certain items destroyed in the fire; a warranty deed and real estate conveyance tax return; a bill from an attorney for the preparation of closing documents; a sheath of documents entitled 'Results of Your Mortgage Calculation'; articles of organization of [the] plaintiff; promissory notes; a tax bill to John Duda for 370 Danbury Road, New Milford, Ct.; a boundary survey of the subject property prepared for the plaintiff; an agreement between Malgorzaa Kobialka and Carl Glatzel, trustee of the Carl T. Glatzel, Jr. Irrevocable Trust, dated April 10, 2005, for the sale and purchase of 26 Nutmeg Drive, New Milford, Ct.; a copy of a foreclosure . . . lawsuit and a lis pendens filed by John Duda and the John Duda Living Trust against the plaintiff and Glatzel as to the subject property; a closing statement for the plaintiff's sale of the subject property on June 26, 2006; and a survey of the subject property."

accurate. [Glatzel] has submitted an affidavit that says that he has provided everything he has in the list of documents requested . . . and [Glatzel] has provided everything that he has that's in that list . . . . So, in terms of the issue of compliance, I think, at the very least, there is a genuine issue of material fact as to whether he complied with the examination under oath. . . . My client . . . has submitted an affidavit that says I just don't have anything else that you want. I've given you everything I have, and I don't have anything else. And I think that's accurate. I believe my client. There is nothing else to give." The defendant's attorney responded: "I am surprised by the statement that . . . Glatzel had tax problems with the IRS and that he didn't file because that is directly contracted by his testimony [at the examination under oath]."

The court granted the defendant's motion for summary judgment on May 16, 2008. This appeal followed. Additional facts will be set forth as necessary.

We initially note the well established standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Curley* v. *Kaiser*, 112 Conn. App. 213, 219–20, 962 A.2d 167 (2009). "A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Pagan* v. *Gonzalez*, 113 Conn. App. 135, 137, 965 A.2d 582 (2009). "On appeal, we must

determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a] defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Davis* v. *Davis*, 112 Conn. App. 56, 62, 962 A.2d 140 (2009).

I

The plaintiff first claims that the court improperly concluded that (1) Glatzel had filed federal and state income tax returns for the years 2001 through 2006 and (2) he failed to provide these returns to the defendant. We disagree.

In moving for summary judgment, the defendant alleged that no genuine issue of material fact existed as to whether (1) the plaintiff had complied with its duties under the insurance policy and (2) compliance with its duties is a condition precedent to recovery by the plaintiff under the policy. The insurance policy issued by the defendant contains a section entitled "Duties In The Event Of Loss Or Damage" that provides in relevant part: "a. You must see that the following are done in the event of loss or damage to Covered Property . . . (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed. (6) As often as may be reasonably required, permit us to . . . examine your books and records. . . . (8) Cooperate with us in the investigation or settlement of the claim. b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed." The policy also

provides, in the commercial property conditions section: "No one may bring a legal action against [the defendant] under this Coverage Part unless: 1. There has been full compliance with all of the terms of this Coverage Part . . . ."

The basis for the defendant's request of the financial and tax records in question was predicated on the findings by investigators that the fire was suspicious in nature.[4] "[I]n order to establish a prima facie case of arson for purposes of denying coverage under an insurance policy, the insurer must establish that the fire was incendiary [and] that the insured, its agents or officers had an opportunity to cause the fire . . . . These elements are in accord with the leading treatises on insurance." (Internal quotation marks omitted.) *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 801, 807 A.2d 467 (2002).[5] Additionally, as the court noted in its memorandum of decision, "[a]rson is a difficult crime to prove. It can only be established by circumstantial evidence and by inquiries into motive. Financial records of the insured are, as the cases say, patently relevant to the insurance company's rightful scope of the investigation." (Internal quotation marks omitted.)

In deciding the motion for summary judgment, the court first found that, although the language of the

---

[4] The defendant submitted the sworn affidavit of William G. May, the fire marshal of the town of New Milford, which stated that he conducted a cause and origin investigation into the structure fire that occurred on the plaintiff's property and that "during the investigation and inspection of the premises, it was concluded that the fire was intentionally set with two points of origin."

The defendant also submitted the sworn affidavit of David Rentz, a cause and origin fire investigator retained by the insurance adjuster for the defendant, which stated that he had conducted an investigation into the fire and "was able to determine that the fire was intentionally set and originated at two distinct locations within the structure."

[5] We note that the court in *Travelers Ins. Co.* concluded that Connecticut should not require motive to be proven as a separate element of a civil arson defense but that motive is still relevant to such a defense; the court held that "its role is best served by bolstering cases in which direct evidence of arson is lacking." *Travelers Ins. Co.* v. *Namerow*, supra, 261 Conn. 803.

insurance policy did not impose obligations on Glatzel to disclose purely personal information or personal tax returns, Glatzel was nevertheless required to disclose this information because he and the plaintiff were one and the same, and, therefore, the court should disregard the corporate structure and pierce the corporate veil. The court concluded that "[i]n light of the circumstances surrounding the fire loss, the temporal proximity of the plaintiff's highly leveraged purchase of the property to the fire loss, the incendiary nature of the fire [and] the apparent absence of any regular source of income enjoyed by Glatzel, Glatzel's personal income tax returns were highly material."

The plaintiff contends on appeal that the court improperly decided an issue of fact by concluding that Glatzel admitted at his examination that he had filed personal income tax returns. The plaintiff denies that there was an unequivocal admission that tax returns were filed on behalf of the plaintiff, and Glatzel filed a sworn affidavit on October 25, 2007, in which he stated: "I have provided [the defendant's attorneys], via my attorneys, with all documents in my possession, or that I was able to obtain in the exercise of due diligence, that correspond with the requests [for documents]." In his affidavit, Glatzel does not specifically refute the existence of the requested tax returns, but the plaintiff in its brief asserts that the court should have presumed, for the purposes of deciding a motion for summary judgment, that Glatzel's affidavit was accurate and that the statement in the affidavit was "sufficient to create a legally sufficient doubt as to the meaning of the above cited deposition transcript." The court found that, although the plaintiff's attorney had represented at oral argument that the tax returns did not exist, Glatzel's sworn testimony at his examination under oath that

such tax returns had been filed remained uncontradicted.[6]

The statement in Glatzel's affidavit is not sufficient to raise a genuine issue of material fact. "The party opposing summary judgment must present a factual predicate for his argument to raise a genuine issue of fact." *Barasso* v. *Rear Still Hill Road, LLC*, 81 Conn. App. 798, 803, 842 A.2d 1134 (2004). "[S]ome evidence showing the existence of such an issue must be presented in the counteraffidavit." (Internal quotation marks omitted.) *Stokes* v. *Lyddy*, 75 Conn. App. 252, 257, 815 A.2d 263 (2003). "Further, [i]t is not enough . . . merely to assert the existence of such a disputed issue . . . [instead] the genuine issue aspect requires the party to bring forward before trial *evidentiary facts*, or *substantial evidence outside of the pleadings*, from which the material facts alleged in the pleadings can warrantably be inferred." (Emphasis in original; internal quotation marks omitted.) *Wadia Enterprises, Inc.* v. *Hirschfeld*, 27 Conn. App. 162, 168–69, 604 A.2d 1339, aff'd, 224 Conn. 240, 618 A.2d 506 (1992).

"A mere assertion of fact in the affidavit of the party opposing summary judgment is not enough to establish the existence of a material fact that, by itself, defeats a claim for summary judgment." *Campbell* v. *Plymouth*, 74 Conn. App. 67, 83, 811 A.2d 243 (2002). "[A]ffidavits filed in connection with a motion for summary judgment must be made on personal knowledge, must set forth facts which would be admissible in evidence, and must show that the affiant is competent to testify to all matters stated in the affidavit. . . . Mere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue." (Citations omitted;

---

[6] As noted by the court in its memorandum of decision, it is axiomatic that an attorney's argument is not evidence. See *State* v. *Santangelo*, 205 Conn. 578, 585, 534 A.2d 1175 (1987).

internal quotation marks omitted.) *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 377, 260 A.2d 596 (1969).

In *12 Havemeyer Place Co., LLC* v. *Gordon,* 93 Conn. App. 140, 888 A.2d 141 (2006), a case involving the legality and enforceability of a lease, this court held that, in determining whether summary judgment was proper on the issue of whether the action had been brought in good faith, an affidavit submitted in support of the plaintiff that claimed, "I tested the validity of the lease in good faith by instituting legal proceedings" was a conclusion, not a statement of fact based on personal knowledge. (Internal quotation marks omitted.) Id., 157. The court concluded that the affidavit was insufficient to oppose a motion for summary judgment. Id.

Similarly, in *Fidelity Bank* v. *Krenisky,* 72 Conn. App. 700, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002), the moving party disputed that an accord had been reached between the parties, and the court concluded that the statements in the affidavit did not raise a genuine issue of material fact as to the existence of an accord, where the affidavit provided in relevant part: "The matter was initially resolved in [April, 1997] and then the bank repudiated same. I sent them, as agreed, all the back mortgage payments along with check [no.] 3378 . . . made out to the City of New Haven, which was never cashed. Defendant[s] believed this resolved the dispute. Plaintiff repudiated same, and returned these checks, for no apparent reason." (Internal quotation marks omitted.) Id., 719.

On the basis of our review of the affidavits and other documents submitted to the court, we conclude, contrary to the plaintiff's assertion, that none of the documents raise a genuine issue of material fact as to the existence of the tax returns. Glatzel's statement in his affidavit that he submitted everything that he could

obtain through the exercise of due diligence, like the statements in *12 Havemeyer Place Co., LLC* v. *Gordon*, supra, 93 Conn. App. 157, and *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 719, is merely a conclusion and does not raise a genuine issue of material fact. Because the plaintiff failed to demonstrate the requisite underlying factual predicate for the existence of a genuine issue of material fact, the court's decision to grant the motion for summary judgment was legally and logically correct.

II

The plaintiff's second claim is that the court failed to apply the substantial compliance standard when it evaluated the plaintiff's cooperation with the examination under oath. Specifically, the plaintiff claims that the court demanded "absolute perfection, not substantial compliance," in determining that the plaintiff had failed to cooperate with the investigation as required by the terms of the insurance contract. We are not persuaded.

"Generally, in the absence of a reasonable excuse, when an insured fails to comply with the insurance policy provisions requiring an examination under oath and the production of documents, the breach generally results in the forfeiture of coverage, thereby relieving the insurer of its liability to pay, and provides the insurer an absolute defense to an action on the policy." (Citations omitted.) 13 G. Couch, Insurance (3d Ed. 1999) § 196.23, pp. 196-31 through 196-32. "In the absence of estoppel, waiver or other excuse, cooperation by the insured in accordance with the provisions of the policy is a condition the breach of which puts an end to the insurer's obligation. . . . The lack of cooperation, however, must be substantial or material. *Curran* v. *Connecticut Indemnity Co.*, 127 Conn. 692, 696, 20 A.2d 87 (1941); *Rochon* v. *Preferred Accident Ins. Co.*, 118 Conn. 190, 198, 171 A. 429 (1934); annot., 60 A.L.R.2d 1146, 1150 [1958]. In this state, where an insurer raises

the issue of the violation of the cooperation clause of the policy by a special defense, the burden is on the plaintiff to prove cooperation by the insured. *Arton* v. *Liberty Mutual Ins. Co.*, [163 Conn. 127, 135, 302 A.2d 284 (1972)]; *Manthey* v. *American Automobile Ins. Co.*, 127 Conn. 516, 519, 18 A.2d 397 (1941)." (Citations omitted; internal quotation marks omitted.) *O'Leary* v. *Lumbermen's Mutual Casualty Co.*, 178 Conn. 32, 38, 420 A.2d 888 (1979).

"[T]he condition of cooperation with an insurer is not broken by a failure of the insured in an immaterial or unsubstantial matter. . . . The reason why immaterial and unsubstantial failures of an assured do not constitute a breach is because they are not included within the fair intendment of the requirement that the assured cooperate, and lack of prejudice to the insurer from such failure is a test which usually determines that a failure is of that nature." (Citation omitted; internal quotation marks omitted.) *Arton* v. *Liberty Mutual Ins. Co.*, supra, 163 Conn. 133–34. "A cooperation clause in a liability insurance policy requires that there shall be a fair, frank, and substantially full disclosure of information reasonably demanded by the insurer to enable it to prepare for, or to determine whether there is, a genuine defense. . . . [I]t has been held that an insured's failure to disclose information breached a cooperation clause [when] . . . [t]he insured . . . [failed] to provide information requested by the insurer." 14 G. Couch, Insurance (3d Ed. 1999) § 199.39, pp. 199-71 through 199-72.[7]

The plaintiff claims that its cooperation with the defendant's investigation satisfied the substantial compliance standard. It claims that it "almost completely complied with the [defendant's] requests for disclosure

[7] See, e.g., *304 Meat Corp.* v. *New York Property Ins. Underwriting Assn.*, 188 App. Div. 2d 382, 591 N.Y.S.2d 390 (1992).

and production" and that the court erred "in demanding absolutely perfect compliance . . . ." We disagree. The court found that the plaintiff breached the cooperation provision of the insurance policy by not providing the requested tax returns and, additionally, that the plaintiff did not demonstrate that the insurer was not prejudiced by the breach. We agree with the court that, in the course of an arson investigation by an insurer, "requests for income records are certainly material inquiries" and that "[i]n view of the fact that direct proof of arson is seldom available, courts have recognized that the requisite degree of proof can be satisfied in civil cases by circumstantial evidence . . . . Information gleaned from the tax returns of an individual insured or the officers of a corporate insured can be of crucial significance in that regard." (Citation omitted; internal quotation marks omitted.), quoting *2423 Mermaid Realty Corp.* v. *New York Property Ins. Underwriting Assn.*, 142 App. Div. 2d 124, 131, 534 N.Y.2d 999 (1988), leave to appeal denied, 74 N.Y.2d 607, 543 N.E.2d 746, 545 N.Y.S.2d 103 (1989). We conclude that there is no genuine issue of material fact regarding whether the plaintiff failed to provide the defendant with requested information that the court properly deemed to be material to the investigation.

The judgment is affirmed.

In this opinion the other judges concurred.