## 12 HAVEMEYER PLACE COMPANY, LLC *v.* ALLAN S. GORDON (AC 22376)

Lavery, C. J., and Mihalakos and Dupont, Js.

Argued November 19, 2002—officially released April 29, 2003

*Eric D. Grayson*, with whom, on the brief, was *Juris V. Zauls*, for the appellant (plaintiff).

*David W. Rubin*, for the appellee (defendant).

*Gail Sassos*, assistant town attorney, filed a brief for the town of Greenwich as amicus curiae.

*Opinion*

DUPONT, J. The plaintiff lessor, 12 Havemeyer Place Company, LLC, appeals from the judgment of the trial court rendered in favor of the defendant lessee, Allan S. Gordon, in this summary process action in which the plaintiff sought eviction of the defendant lessee on the ground that their lease was illegal and, therefore, that the tenancy was void or voidable.[1] The basis for the court's judgment was that the plaintiff was not entitled to evict the defendant from sixteen leased parking spaces because the lease of those spaces was legal and because "equity abhors forfeiture."[2] The plaintiff claims

---

[1] We note that the plaintiff did not seek damages or injunctive relief from the continued use by the defendant of the leased premises, but sought only possession of the premises. Moreover, the plaintiff does not claim possession on the ground that the defendant breached a provision of the lease.

[2] The court's oral decision in relevant part was as follows: "In this case for eviction, the plaintiff seeks to evict the defendant from sixteen parking spaces which are based—which are included in a lease. The court concludes, based upon the testimony I've heard, that the lease itself was not illegal as claimed by the plaintiff, but rather, there may have been an illegal nonconforming use.

"The court further is convinced that the plaintiff had the opportunity to cure the zoning violation, to change the manner of use. I doubt the reasoning of [the defendant's attorney] that the plaintiff could have cured the illegality if—the illegal nonconforming use by reducing the square footage or by changing the use, all of which were in his grasp.

"It is important for the court in making this ruling to express that equity

on appeal that (1) the lease in question was illegal ab initio and, therefore, unenforceable, and (2) the court improperly based its decision on relief from forfeiture because that was not pleaded as a special defense or argued at trial. We conclude that the lease was legal and, therefore, affirm the judgment of the trial court.[3]

This dispute relates to the parties' interests in sixteen parking spaces located in an underground parking garage, which currently is owned by the plaintiff, at 60 Arch Street in the town of Greenwich.[4] The basic facts underlying the issues of this appeal are not disputed, and we are presented with questions of law for which

abhors forfeiture. That being so, I think it be would unjust for this court . . . to take sixteen spaces away from the defendant when the defendant had the right to ten of those spaces, certainly by that site plan.

"I don't think it would be appropriate and just for this court to do that. I think that the lease was legal. If I were to rule otherwise, all I could see is that the plaintiff would reap a tremendous advantage off the back of the defendant, who had nothing to do with creating any illegality in the situation, even the nonconforming use.

"And searching the title for the premises, the defendant was under no obligation to search the land records for the building across the street. Accordingly, judgment shall enter in favor of the defendant. No eviction is ordered by the court."

[3] We need not reach the plaintiff's second claim in view of our conclusion that the lease was legal. We note, however, that the defendant asserted special defenses resting on equitable principles, and that defenses and counterclaims dependent on equitable principles implicating the right to possession can be determined in a summary process action. *Fellows* v. *Martin*, 217 Conn. 57, 61–63, 584 A.2d 458 (1991).

[1] The town filed an amicus curiae brief in which it agreed with the position of the plaintiff as to the illegality of the lease. The town's brief does not address the equitable issue of whether forfeiture of the lease should have resulted because it violated the town's zoning regulations. The town is not a party to this case, nor did it seek to intervene as a party. This case concerns two private parties and is not a case in which a town brings an action to prevent a claimed illegality from continuing; see *Johnson* v. *Murzyn*, 1 Conn. App. 176, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984); or one brought against a town's zoning officials to assert rights of private property owners arising from a claimed illegality allowed to exist by the officials; see *Scoville* v. *Ronalter*, 162 Conn. 67, 291 A.2d 222 (1971); or a case in which the town sought to intervene as a party plaintiff. See *Elida, Inc.* v. *Harmor Realty Corp.*, 177 Conn. 218, 413 A.2d 1226 (1979).

our review is plenary. *Feldmann* v. *Sebastian*, 261 Conn. 721, 725, 805 A.2d 713 (2002).

The defendant leases the sixteen parking spaces from the plaintiff for the benefit of a building owned by the defendant at 71 Arch Street. The following transactional history is relevant to our discussion of this appeal. In 1980, John Jay Ginter Development and Construction, Inc., the then owner of both 60 Arch Street and 71 Arch Street, filed a site plan for 60 Arch Street with the town of Greenwich planning and zoning commission (commission). The commission approved the site plan, which showed a three story office retail building with a total of fifty-eight parking spaces. The preliminary site plan approval application, dated November 12, 1980, designated forty-eight of the spaces for 60 Arch Street and ten for 71 Arch Street. This designation, however, was deleted from the application for final site plan approval, dated December 8, 1980, which merely proposed fifty-eight spaces without any reference to 71 Arch Street. In a subsequent site plan, dated December 10, 1980, the designation of forty-eight spaces required for 60 Arch Street and the ten spaces for 71 Arch Street reappeared.

By 1988, Greenwich Cove Associates (Greenwich Cove), a predecessor of both the plaintiff and the defendant, had acquired both 60 Arch Street and 71 Arch Street. In August, 1988, Greenwich Cove negotiated the sale of 60 Arch Street to Skanska, Inc. As a final negotiated term of the sale, Skanska, Inc., the new owner of 60 Arch Street, leased sixteen of 60 Arch Street's fifty-eight parking spaces to Greenwich Cove for use by 71 Arch Street, thereby increasing the number of spaces for 71 Arch Street as described in the site plan by six spaces.[5] This left 60 Arch Street's tenants with the use

_____

[5] At that time, unapproved site plan changes were not specifically prohibited by the town's building zone regulations, but they were subject to sanctions prohibiting the issuance of building permits or certificates of occupancy. Effective February 7, 2001, the regulations were amended, expressly prohibiting unapproved site plan changes.

of only forty-two parking spaces, six fewer than required by the site plan. The lease had a term of fifty years, was renewable thereafter in five year increments and was recorded in the town of Greenwich land records. It is this lease, to which neither the defendant nor the plaintiff originally were parties, which is the subject of this appeal.

In 1989, the defendant purchased 71 Arch Street from Greenwich Cove, thus obtaining the benefit of the lease, as a successor lessee. The defendant testified that the lease, which provided him with sixteen parking spaces in the 60 Arch Street garage, for his tenants at 71 Arch Street, was a major factor for the purchase. In 2000, the plaintiff, which was fully aware of the recorded lease, purchased 60 Arch Street from Skanska, Inc., and became the successor lessor. The purchase price paid by the plaintiff was less than it would have been had there been forty-eight parking spaces allocated to 60 Arch Street instead of forty-two spaces.

The dispute involved in this appeal arose when the plaintiff, as the new owner of 60 Arch Street, inquired of the town of Greenwich about the recorded lease, which left 60 Arch Street with forty-two parking spaces, and about the possible conflict of the lease with the site plan, which required forty-eight spaces for 60 Arch Street.[6] In the preceding twelve years, no tenant, neighbor or predecessor in title of either building had complained to any zoning authority of any site plan violation as it related to parking.[7] The town's zoning enforcement

___

[6] See Greenwich Municipal Code §§ 6-16 and 6-158. A site plan is a plan for the proposed use of a particular site, purporting to indicate all of the information required by the regulations for the use. *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission*, 15 Conn. App. 561, 565 n.4, 545 A.2d 602 (1988), aff'd, 211 Conn. 331, 559 A.2d 196 (1989).

[7] The length of time that a use not permitted by zoning regulations has existed without the institution of court action to enforce the regulations can be a factor in determining whether the use may be continued. See General Statutes § 8-13a (b). No claim of laches can be asserted as to a town. *West Hartford* v. *Rechel*, 190 Conn. 114, 120, 459 A.2d 1015 (1983).

officer responded to the plaintiff's inquiry by stating that he believed there was a violation of a zoning regulation.

Thereafter, in January, 2001, the plaintiff rejected the defendant's tender of rent and informed the defendant by letter that it was of the opinion that the lease was void or voidable because it violated the site plan. In February, 2001, in a separate action, the defendant in this case instituted an action against the plaintiff in this case seeking a declaratory judgment as to the enforceability of the lease, injunctive relief and damages. The plaintiff also claimed damages for tortious interference with his leases with his tenants, which leases granted the tenants the right to use the parking spaces at 60 Arch Street.[8] The defendant lessee, the plaintiff in that case, on the record, withdrew his application for a temporary restraining order against his lessor in exchange for the plaintiff's agreement to seek a variance of the site plan.[9] The zoning board of appeals denied the application for a variance because a hardship was not demonstrated, but the lessor, the plaintiff in this case, did not appeal to the Superior Court from the denial.[10]

After the variance was denied, the zoning enforcement officer cited the plaintiff for the reduction of on-site parking as a violation of § 6-16 of the municipal building code regulations and directed the plaintiff to restore the forty-eight parking spaces as provided in the site plan.

Subsequently, the plaintiff served the defendant with a notice to quit and then brought the summary process

[8] The action, *Gordon* v. *12 Havemeyer Place Co., LLC*, Docket No. CV 01-0184544S, is still pending, although a notation in that court file indicates that no decision will be made as to it because of the action that is the subject of this appeal.

[9] It is unclear from the transcript of the lessor's agreement to seek a variance, if the agreement included an appeal to the Superior Court in the event of a denial of a variance.

[10] The plaintiff's principal testified in this case that he did not want the variance granted.

action for immediate possession of the sixteen parking spaces, which is the subject of this appeal.[11] The defendant asserted three special defenses to the summary process action. He alleged that the lease was not illegal or void, that equity barred the plaintiff's claim "by virtue of, among other things, the facts set forth at length in its Complaint dated February 14, 2001, in the action [*Gordon* v. *12 Havemeyer Place Co., LLC*, Docket No. CV 01-0184544S] and the doctrines of equitable estoppel, laches, unclean hands and unjust enrichment," and that the plaintiff failed to state a claim on which relief could be granted. The court rendered judgment in favor of the defendant.

The precise question we must answer, for which we could find no appellate decisional authority in Connecticut or elsewhere, is whether a lessor, on the ground of illegality, may gain possession of leased premises from a lessee solely on the ground that the recorded lease varied the requirements of a site plan, when the lessee has not breached any covenant of the lease and the town has not cited the lessee for a violation or ordered the lessee to take any corrective action.

The plaintiff claims that the lease was illegal ab initio. Specifically, it argues that the terms of the lease expressly and illegally violated the site plan and, therefore, the lease is unenforceable. We disagree.

The following are the relevant portions of the subject lease of the parties: "WHEREAS, pursuant to requirements of the Planning and Zoning Commission of Greenwich, Connecticut, ten (10) parking spaces at the [60 Arch Street] Premises must be set aside for the use and

---

[11] Even if the plaintiff were to prevail in its argument that the lease was unenforceable because it illegally provided the defendant with the use of six more spaces than the site plan allowed, the defendant could not be evicted from all sixteen parking spaces without negating the site plan under which he was entitled to ten spaces.

benefit of tenants of 71 Arch Street;[12] and WHEREAS, the parties hereto wish to execute this Lease and provide six additional parking spaces upon the Premises for the tenants of 71 Arch Street . . . .

"NOW, THEREFORE, the parties hereto agree as follows:

"1. Lease of Parking Spaces. Lessor [formerly Swanska, now the plaintiff] hereby leases to Lessee [formerly Greenwich Cove, now the defendant] the sixteen (16) parking spaces at the Premises . . . on the terms and conditions set forth herein.

\* \* \*

"4. Use. Lessee shall use and occupy the Parking Spaces, and have the rights provided for herein with respect to the Parking Spaces and the Premises, for no purpose other than parking for the tenants of 71 Arch Street. Lessee, the tenants of 71 Arch Street and their agents, employees, or invitees shall comply with all reasonable rules and regulations provided in writing by Lessor to Lessee regarding the use of the Parking Spaces.

"5. Requirements of Law. The manner of use of the Parking Spaces by Lessee, the tenants of 71 Arch Street and their agents, employees, or invitees shall comply with, and Lessor, in other respects, shall comply with, all statutes, ordinances, rules, orders, regulations and requirements of the federal, state and city government and of any and all other departments and bureaus applicable to the Parking Spaces.[13]

---

[12] This language could be read to mean that the planning and zoning commission required a minimum of ten spaces for the tenants of 71 Arch Street as opposed to a maximum of ten spaces. In any event, the parties to a lease are presumed to know the zoning restrictions of a property because that knowledge is imputed to them. See *Entrepreneur Ltd.* v. *Yasuna*, 498 A.2d 1151, 1159 (D.C. 1985).

[13] It is noted that paragraph five requires the *lessee*, its agents, employees or invitees to comply with the *"manner of use"* of the [p]arking [s]paces" and the *lessor "in other respects"* to comply with city regulations. (Emphasis

* * *

"16. This lease may not be terminated without the written consent of both Lessor and Lessee."

The lease, thus, does not facially provide that any parking spaces in excess of ten violates the Greenwich zoning regulations. It provides that the lessor is responsible for compliance with regulations of government and it provides that the lease may not be terminated without the consent of both parties.

In rendering our decision, we are mindful of the well recognized principle that "no court will lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law." (Internal quotation marks omitted.) *Solomon* v. *Gilmore*, 248 Conn. 769, 785, 731 A.2d 280 (1999). It is also true that "[t]he principle that agreements contrary to public policy are [unenforceable] should be applied with caution and only in cases plainly within the reasons on which that doctrine rests . . . ." (Internal quotation marks omitted.) Id., 790. It is a general rule that contracts entered into voluntarily by competent persons should be held valid and enforceable in the courts. *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 377, 321 A.2d 444 (1973). Thus, "[t]he impropriety injurious to the interests of society which will relieve a party from the obligation he has assumed must be clear and certain before the contract will be found void and unenforceable." Id.

To support its claim of illegality, the plaintiff primarily relies on *Sippin* v. *Ellam*, 24 Conn. App. 385, 588 A.2d 660 (1991). The defendant argues that *Sippin* is distinguishable from the present case. In *Sippin*, this court was asked to determine whether there was suffi-

added.) Neither the plaintiff, nor the defendant argue that the lease imposed a requirement on the lessee to abide by city regulations.

cient evidence to support the trial court's finding that a lease was illegal, and that, therefore, the plaintiff lessor could not recover for rent or for the fair rental value for use and occupancy because "[a] lease agreement entered into in violation of the law creates no rights in the wrongdoer." Id., 392.

The lease in *Sippin* specifically provided that "the premises were to be occupied only for offices for conducting any and all operations as they relate to a real estate operation." (Internal quotation marks omitted.) Id., 387 n.1. The plaintiff lessor's deed to the leased real estate contained a restrictive covenant prohibiting any commercial use, but the defendant tenant was unaware of that restriction in the plaintiff's deed. Id., 387. Approximately one year after the execution of the lease, the local zoning enforcement agency ordered the defendant tenant[14] "to cease and desist the operation of his business because the premises were located in a residential zone." Id. The defendant subsequently vacated the premises and the plaintiff initiated suit to recover rent arising from a breach of the covenant to pay rent, or, in the alternative, the fair rental value of the premises, as well as damages for repairs and waste.[15] Id., 387–88.

In Sippin, "[t]he trial court specifically found that "[t]here is no question but that the lease was illegal *pursuant to the restrictive covenant* against any com-

---

[14] In *Sippin*, the original lease was between the plaintiff and two defendants, Ellam and Longo. Prior to the lawsuit, the defendant Ellam left the premises and left the business, but his signature remained on the lease. *Sippin* v. *Ellam*, supra, 24 Conn. App. 387. For the purpose of this decision, we will use the singular "defendant" to refer to Longo, the defendant who remained in possession of the premises and vacated the premises due to the cease and desist order.

[15] The trial in *Sippin* court awarded the plaintiff one dollar in damages on his claim for waste and damages for repairs; *Sippin* v. *Ellam*, supra, 24 Conn. App. 388; but the plaintiff did not challenge that portion of the judgment on appeal.

mercial use. It is therefore clear that such an undertaking is illegal and voids the agreement. [The plaintiff] is therefore not entitled to recover rent under the lease." (Emphasis added; internal quotation marks omitted.) Id., 389 n.4. The court, in discussing the plaintiff's claim in quantum meruit to obtain the fair rental value for use and occupancy concluded that the "[t]hing to be done here and which was *prohibited by the covenant,* was the suffering of the premises in question to be used for commercial purposes." (Emphasis added; internal quotation marks omitted.) Id., 390. Thus, the trial court rested its judgment, which was affirmed by us, on the plaintiff's violation of the restrictive covenant rather than on any violation of the zoning laws.[16]

Although we noted in *Sippin* that "[t]here is absolutely no question here that the lease was being illegally maintained because of both the operative zoning laws and the restrictive covenant contained in the warranty deed"; id., 388; our holding was not dependent on any illegality arising from the violation of a zoning regulation. Thus, the holding in *Sippin* is not determinative of the holding in this case.

We are not, nor was the *Sippin* court, concerned with a town's admitted right to enact zoning regulations and enforce them, but rather with whether an illegality existed at the time the lease was executed.[17] The most significant distinction between *Sippin* and this case is

[16] On appeal to this court, the *Sippin* plaintiff argued that the trial court could not conclude that the defendants' operations involved a purpose that violated the restrictive covenant, and was therefore illegal. *Sippin* v. *Ellam,* supra, 24 Conn. App. 389. It does not appear from the briefs in the *Sippin* case that either party in the trial court or in this court argued the legality of the lease because it violated a zoning regulation, but instead argued the legality on the basis of the restrictive covenant. The trial court rested its judgment solely on illegality arising from the restrictive covenant.

[17] The legality of a contract is usually tested as of the date of its execution. See *Hatcho Corp.* v. *Della Pietra,* 195 Conn. 18, 20, 485 A.2d 1285 (1985); 17 C.J.S., Contracts § 15 (1999).

that the former involved the illegality of a lease that nullified a recorded restrictive covenant in a deed and the latter involves the alleged illegality of a lease that nullified a zoning regulation. A restrictive covenant in a deed runs with the land and restrains the use to which land may be put in the future, as well as the present, and may affect its value. *Dick* v. *Sears-Roebuck & Co.*, 115 Conn. 122, 125, 160 A. 432 (1932). Unlike a zoning regulation, for which there is a procedure for a variance from the regulation, the covenant, if not against public policy, remains in effect, indefinitely, in accordance with its terms. In *Sippin*, the covenant trumped the terms of the lease. In our case, the question is whether the site plan trumps the lease. Other differences in *Sippin* and our analysis of other cases, lead us to a different conclusion than that of *Sippin*.

*Sippin* concerned a breach of lease and was a case in which the lessor argued that the lease was legal in order to obtain rent. In our case, there is no breach of any covenant of the lease by the lessee, and the lessor argues that the lease was illegal in order to obtain possession. In *Sippin*, the lessee was ordered by the town to stop using the premises for business purposes, whereas in our case, it was the lessor that was cited by the town. In *Sippin*, no argument was made that the violation was curable, whereas in the present case, the defendant lessee argues that it was curable, by among other things, the obtaining of a variance. In *Sippin*, the lease required the lessee to conform to rules and regulations; in the present case, the lease required the lessor to comply with all ordinances of the city government, without any requirement on the part of the lessee to do so.

The parties in this case do not dispute that the lease increases the number of parking spaces for the defendant, as provided by the site plan or the zoning regulations. The plaintiff claims that the decrease in parking

for its tenants renders the lease illegal and equates that deficiency with the use of premises for a business purpose in a residential zone.

Generally, agreements contrary to public policy, that is those that negate laws enacted for the common good, are illegal and therefore unenforceable. Contractual rights arising from agreements are subject to the fair exercise of the power of the state to secure health, safety, comfort or the general welfare of the community. *Elida, Inc.* v. *Harmor Realty Corp.*, 177 Conn. 218, 223, 413 A.2d 1226 (1979). The question to be resolved is whether the site plan in this case is a zoning regulation involving the common good or a regulation that has as its overriding purpose a private goal that does not contravene the common good.

There are gradations of violations of statutes ranging from per se violations, that is, those manifestly in total derogation of a particular statute, to those that affect fewer persons in limited circumstances; see id., 228–31; or which are minor in nature. Minor violations of zoning do not lead to a conclusion that the violation causes a lease to be invalid. See *Diamond Housing Corp.* v. *Robinson*, 257 A.2d 492 (D.C. 1969); see also *Rowe* v. *Wells Fargo Realty Services, Inc.*, 166 Cal. App. 3d 310, 212 Cal. Rptr. 374 (1985); *Bennett* v. *Waffle House, Inc.*, 771 So. 2d 370 (Miss. 2000); *Kearns* v. *Barney's Clothes, Inc.*, 38 Misc. 2d 787, 239 N.Y.S.2d 318 (1963).

Claims that contracts are void because of a violation of public policy as embodied in a statute are considered against the backdrop of the particular statute. See, e.g., *Burkle* v. *Car & Truck Leasing Co.*, 1 Conn. App. 54, 57–58, 467 A.2d 1255 (1983). The particular facts involved in the claim that a contract is against public policy also temper the conclusion as to whether illegality exists. See *Williams* v. *Vista Vestra, Inc.*, 178 Conn. 323, 328, 422 A.2d 274 (1979).

The basic purpose of zoning is to restrict certain classes of buildings and uses to certain localities within the community. See *Weyls* v. *Zoning Board of Appeals*, 161 Conn. 516, 519, 290 A.2d 350 (1971). Zoning divides a community into geographical zones, such as residential, business and industrial, to ensure that the uses on the individual properties within the zones are compatible with each other. A site plan, on the other hand, is a plan for the proposed use of a particular site, indicating all of the information required by the regulations for that site. *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission*, 15 Conn. App. 561, 566 n.4, 545 A.2d 602 (1988), aff'd, 211 Conn. 331, 559 A.2d 196 (1989). A site plan may be modified at the discretion of a planning and zoning commission to provide for a lesser number of parking spaces than the number required by the zoning regulations. See *McCrann* v. *Town Plan & Zoning Commission*, 161 Conn. 65, 71–72, 282 A.2d 900 (1971).

"Whether a contract is unlawful is usually determined as of the time of its making and is not affected by subsequent changes of facts." 17A C.J.S., Contracts § 197 (1999). The preponderance of the cases make it clear that, if a variance is possible, a lease is not necessarily void and unenforceable. See annot., Rights Between Landlord and Tenant as Affected by Zoning Regulations Restricting Contemplated Use of Premises, 37 A.L.R.3d 1018 (1971). A lease is not necessarily void if, reasonably, the prohibition can be made legal through administrative or judicial action. Id., 1044. A lease does not have an unlawful purpose if the zoning laws incorporate a procedure by which a variance from the letter of the law may be obtained. *Entrepreneur, Ltd.* v. *Yasuna*, 498 A.2d 1151 (D.C. 1985).

"Parties may bind themselves to a contract that calls on its face for a use of property that violates the zoning laws because, due to the possibility of obtaining a vari-

ance, such a bargain is not against public policy or public morals." (Internal quotation marks omitted.) Id., 1158; see also *McNally* v. *Moser*, 210 Md. 127, 135, 122 A.2d 555 (1956); *Verschell* v. *Pike*, 85 App. Div. 2d 690, 691, 445 N.Y.S.2d 489 (1981); 37 A.L.R.3d 1018, 1039–44. "A lease providing for a use of premises which is prohibited by the zoning law is not necessarily illegal where it appears that an appeals board has the authority to permit a variance." (Internal quotation marks omitted.) *Entrepreneur, Ltd.* v. *Yasuna*, supra, 498 A.2d 1159 n.5; see also *Young* v. *Texas Co.*, 8 Utah 2d 206, 209, 331 P.2d 1099 (1958).

The parties to the lease in this case contemplated that the number of parking spaces for 71 Arch Street would be sixteen. The zoning laws at the time of the execution, and at the present time, incorporate a procedure by which variances from the letter of the zoning law may be obtained.

In this case, the plaintiff, pursuant to its agreement with the defendant in open court, applied to the zoning board for a variance, which admittedly was not wanted by the plaintiff and which was denied. The denial of the variance has not yet been tested by the courts because the plaintiff did not appeal.[18] The plaintiff cannot rely on the alleged illegality at the time of the execution of the lease because the lease could have been made legal reasonably at the time of its execution through administrative or judicial action. We do not know the contents of the plaintiff's application for a variance or the specific reasons for the denial, other than the terse phrase, "lack of a hardship." We cannot predict, therefore, whether a second application for a variance is possible, or if so, whether it would be granted. "[T]he construction of a statute on an issue that

---

[18] The plaintiff's failure to take an appeal was not surprising because its self-interest did not lie in obtaining a variance or in success on appeal.

has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference." *Schlumberger Technology Corp.* v. *Dubno*, 202 Conn. 412, 423, 521 A.2d 569 (1987). We cannot conclude, therefore, with any certainty, without a judicial determination, whether the variance should have been granted.

On the particular facts of this case, the plaintiff is not entitled to possession because we hold that the violation of the zoning laws with regard to the parking required by the site plan was not sufficient to render the lease illegal as against public policy.

The judgment is affirmed.

In this opinion the other judges concurred.