******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CARRIAGE HOUSE I-ENFIELD ASSOCIATION, INC. *v.*
CAROL A. JOHNSTON ET AL.
(AC36997)

Beach, Keller and Mihalakos, Js.

*Argued May 18—officially released October 6, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Mullins, J.)

*J. Christopher Kervick*, for the appellants
(defendants).

*Ronald J. Barba*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendant, Carol A. Johnston,[1] appeals from the trial court's judgment of foreclosure by sale of her condominium unit in favor of the plaintiff, Carriage House I-Enfield Association, Inc., as well as the court's judgment denying her motion for reargument and reconsideration. On appeal, the defendant claims that (1) the court improperly failed to grant her relief under an impossibility defense, and (2) the court erred when it concluded that an allegedly illegal and unenforceable contract between the plaintiff and the defendant subsequently was rendered legal and enforceable. We affirm the judgments of the trial court.

The following facts, as found by the court, and procedural history are relevant to the defendant's appeal. In 2003, the defendant acquired townhouse condominium unit number 92 (unit 92), together with a garage and parking space number 92, located at the Carriage House I-Enfield Condominiums in Enfield. On June 10, 2010, the plaintiff's board of directors (board) held a meeting at which it unanimously passed a motion authorizing the expansion of the decks attached to all of the units in the plaintiff's condominium complex.[2] The approved plan gave permission to unit owners who wanted to expand their decks to choose one of four possible layouts for their completed expansions. The defendant ultimately decided to expand unit 92's deck via one of those options.

On June 15, 2010, the president of the board submitted an application on behalf of the plaintiff for a special use permit with the Enfield Planning Department. On July 8, 2010, the Enfield Planning and Zoning Commission (commission) approved the plaintiff's application for a special use permit. On July 29, 2010, the commission's secretary officially granted the special use permit to the plaintiff and certified the commission's approval of the plaintiff's deck expansion plan.

Upon receiving the special use permit, the plaintiff and its condominium unit owners, including the defendant, commenced planning the deck expansion projects. On April 6, 2011, the plaintiff and the defendant entered into a written contract regarding the expansion of unit 92's deck. Most notably, the contract expressly required the defendant to construct a privacy wall on the southwest side of unit 92's expanded deck. Further, the contract provided, inter alia, that the defendant would construct stairs leading from the deck to the common area behind the units, and that the defendant would reimburse the plaintiff for any losses, costs, fines, fees, attorney's fees, and expenses incurred as a result of the deck expansion.

Pursuant to the contract, the defendant applied for a building permit with the commission on April 11, 2011, so that she could carry out unit 92's deck expansion.

The commission received the defendant's application, but informed her that it would not approve a privacy wall on unit 92's deck. Accordingly, the defendant requested that the commission omit the privacy wall from her application. An Enfield zoning enforcement officer subsequently sent a notice to the plaintiff in which she stated that the commission had not approved the privacy wall as a component of unit 92's deck expansion in the plaintiff's July, 2010 special use permit. Shortly thereafter, the plaintiff sent the zoning enforcement officer a letter in which it asserted that it would allow the defendant to expand unit 92's deck only if it included a privacy wall. In this letter, the plaintiff also requested that Enfield not issue a building permit to the defendant until a permit for the construction of a privacy wall on unit 92's deck could be issued. In response to this letter, the director of the commission sent the plaintiff a reply letter in which he stated that the plaintiff would have to reapply to obtain a permit to construct a privacy wall on unit 92's deck because the commission had not approved such a wall in the special use permit that it had granted to the plaintiff in July, 2010.

The defendant obtained a building permit to expand unit 92's deck on May 16, 2011, which did not include approval of a privacy wall. On the same date, the defendant sent a letter to the plaintiff stating that she had obtained a building permit and that she would carry out the expansion of unit 92's deck without constructing a privacy wall. Two days later, the plaintiff responded by a letter in which it asserted that the defendant's failure to attach a privacy wall to her deck would constitute a breach of the April 6, 2011 deck expansion contract. In this May 18, 2011 letter, the plaintiff also indicated that it could impose fines on the defendant and remove and reconstruct unit 92's deck at the defendant's expense if she failed to construct the deck with the privacy wall. Nevertheless, the defendant expanded unit 92's deck without including a privacy wall, completing it at some point before August 3, 2011. In addition to not installing the privacy wall, the defendant failed to comply with several other requirements set forth in the deck expansion contract. Specifically, the defendant's deck did not comply with the deck expansion contract in that the deck railing extended beyond the contract specifications, the flashing was improperly installed, and the deck stairs did not meet the contract specifications.

On June 14, 2011, while the defendant was carrying out the expansion of unit 92's deck, the board applied for a special use permit to construct privacy walls for certain units' deck expansion projects, including the project for unit 92. The commission unanimously approved the plaintiff's application for a special use permit to install the privacy walls on July 21, 2011, but the plaintiff did not record the special use permit until

February 1, 2012. On August 3, 2011, the plaintiff sent a letter to the defendant informing her that the commission had granted the plaintiff a special use permit so that she legally could install a privacy wall on unit 92's deck. The plaintiff also stated in this letter that the defendant would have until August 12, 2011, to choose one of two options regarding unit 92's deck: (1) she could install the privacy wall as agreed; or (2) she could return the deck to its original state.

The defendant failed to respond to the plaintiff's letter. On August 19, 2011, the plaintiff sent the defendant another letter informing her that the board would hold a meeting on the matter on the evening of August 31, 2011, which the defendant was advised to attend. On August 30, 2011, the defendant mailed a letter to the plaintiff in which she stated that she refused to attend the scheduled meeting and that "the only resolution of this matter lies in the courts." The board held the August 31, 2011 meeting and unanimously passed a motion to begin fining the defendant at a rate of $25 per day for every day that she did not pursue one of the two options set forth in the plaintiff's August 3, 2011 letter.[3] The plaintiff conveyed this decision to the defendant in a letter dated September 20, 2011. In this letter, the plaintiff notified the defendant that she would have until October 5, 2011, either to install the privacy wall or to restore unit 92's deck to its original state before the plaintiff would begin fining her $25 per day.[4] The defendant failed to comply and did not elect either option. As a result, the plaintiff proceeded to fine her at a rate of $25 per day beginning on October 6, 2011. The plaintiff also eventually installed a freestanding privacy wall in between the decks of unit 92 and unit 93.

In November, 2011, the defendant brought an equitable action against the plaintiff seeking, inter alia, a declaratory judgment that the deck expansion contract was unenforceable. At a May 10, 2012 meeting held by its board, it unanimously passed a resolution to file a counterclaim against the defendant in her November, 2011 action. On June 1, 2012, the board held another meeting, which the defendant and her husband, Robert E. Johnston, attended with counsel. At this meeting, the board decided to bring a foreclosure action against the defendant for her failure to pay fines accruing from her noncompliance with the April 6, 2011 deck expansion contract. The plaintiff subsequently brought this action against the defendant.

In its operative complaint, the plaintiff claimed in count one that the defendant's failure to pay the fines assessed against her for failure to comply with the deck expansion contract warranted a judgment of foreclosure on unit 92 pursuant to General Statutes § 47-258.[5] In count two of the complaint, the plaintiff claimed that the defendant was liable for breach of the deck expansion contract and sought damages due to the fact

that it had to design, plan, and construct a freestanding privacy wall on its own as a result of the defendant's breach.[6] In her answer, the defendant raised the following two special defenses: (1) the deck expansion contract was illegal because it contained provisions that were noncompliant with Enfield's zoning regulations; and (2) the plaintiff had coerced the defendant to enter into this allegedly illegal contract. On August 9, 2013, the plaintiff filed a motion for summary judgment as to liability. The court, *Sferrazza, J.*, denied this motion on September 23, 2013.

At a bench trial in February, 2014, the court, *Mullins, J.*, examined evidence and heard testimony pertaining to, inter alia, the deck expansion contract, the zoning issues that arose with the commission, and the plaintiff's efforts to collect fines from the defendant for her failure to comply with the contract. Neither party requested a closing argument. On May 30, 2014, the court issued a memorandum of decision in which it ruled in favor of the plaintiff, finding that the deck expansion contract was valid and enforceable. Accordingly, the court rendered judgment of foreclosure by sale of unit 92.

On June 17, 2014, the defendant filed a motion for reargument and reconsideration pursuant to Practice Book § 11-11, in which she argued that performance under the deck expansion contract was impossible because she had no legal authority to expand unit 92's deck or to install the privacy wall. Specifically, she argued that she did not have such authority because the real property upon which the deck and privacy wall were constructed was a common element of the condominium conplex, meaning that neither she nor the plaintiff legally could possess such land exclusively and make improvements upon it without first obtaining consent from all unit owners having a possessory interest in it. She also argued that the deck expansion contract was illegal because her performance under the contract was not within her legal authority.

The court denied the defendant's motion. It concluded in its order that "there is no need for reargument and . . . the claims the defendant raises in her motion were waived prior to trial." Further, the court stated, "[i]ndeed, prior to the start of trial, the defendant agreed that the [plaintiff] had the ability to enter into these types of contracts regarding the deck expansion." This appeal followed. Additional facts will be set forth as necessary.

I

The defendant focuses a significant amount of her appellate brief on the court's treatment of her claim of the impossibility of performance of the deck expansion contract underlying the present foreclosure action. This claim, which the defendant also interchangeably

describes as one of contract illegality, is based on the plaintiff's lack of authority to enter into the deck expansion contract without a vote of the unit owners, as required by the Carriage House I-Enfield condominium declaration (declaration). Specifically, the defendant argues that the court: (1) abused its discretion in denying her motion for reargument and reconsideration on her impossibility claim; (2) committed plain error by concluding that she had waived any impossibility defense; and (3) improperly failed to consider her impossibility claim. The plaintiff argues that the defendant failed to raise distinctly an impossibility defense or this aspect of the contract's alleged illegality, both prior to and during trial, and, therefore, the court did not abuse its discretion in ultimately denying the defendant's motion for reargument and reconsideration on these issues. We agree with the plaintiff and address each of the defendant's arguments related to her impossibility claim in turn.

A

We first address the defendant's claim that the court abused its discretion by denying her motion for reargument and reconsideration relating to her claim of impossibility. We conclude that the court did not abuse its discretion by denying her motion.

We begin by setting forth the appropriate standard of review for this claim. We review a trial court's decision to deny a litigant's motion for reargument and reconsideration for an abuse of discretion. *Gibbs* v. *Spinner*, 103 Conn. App. 502, 506–507, 930 A.2d 53 (2007); *Stein* v. *Horton*, 99 Conn. App. 477, 488, 914 A.2d 606 (2007). "[A]s with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did. . . . In addition, where a motion is addressed to the discretion of the court, the burden of proving an abuse of that discretion rests with the appellant." (Internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Cunningham*, 97 Conn. App. 640, 655, 905 A.2d 1256 (2006).

"[R]eargument is proper when intended to demonstrate to the court that there is some . . . principle of law which would have a controlling effect, and which has been overlooked . . . ." (Internal quotation marks omitted.) *Stein* v. *Horton*, supra, 99 Conn. App. 488. Reargument is also meant for situations where "there has been a misapprehension of facts." (Internal quotation marks omitted.) *Opoku* v. *Grant*, 63 Conn. App. 686, 692, 778 A.2d 981 (2001). Reargument "may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple

or to present additional cases or briefs which could have been presented at the time of the original argument." (Citation omitted; internal quotation marks omitted.) Id., 692–93.

The defendant has not met her burden of proving that the court abused its discretion by denying her motion for reargument and reconsideration. Specifically, she failed to establish that the court overlooked a controlling principle of law or that it misapprehended relevant facts in denying the motion. See *Stein* v. *Horton*, supra, 99 Conn. App. 488; *Opoku* v. *Grant*, supra, 63 Conn. App. 692. In her motion, the defendant primarily argued that reargument was warranted because the evidence in the record, particularly provisions in the declaration, showed that neither she nor the plaintiff had the legal authority to expand unit 92's deck onto land that was a limited common element and in which other unit owners had possessory interests. Thus, she asserted, it was impossible for her to perform the expansion of the deck without first obtaining permission from all of the other unit owners who had possessory interests in the affected common elements. Further, she claimed, this impossibility rendered the deck expansion contract unenforceable and illegal.

Although the contentions in the defendant's motion for reargument and reconsideration might raise conceivably valid points, they amount to "too little, too late." *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 89, 919 A.2d 1002 (2007). She had ample opportunity to raise these impossibility and illegality defenses distinctly in her pleading of two special defenses in her answer,[7] her pretrial memorandum,[8] her objection to the plaintiff's motion for summary judgment,[9] and during the trial.[10] With respect to the evidence that the defendant presented at trial, she claims in her appellate brief that the court operated under a misunderstanding as to the existence of her claim of impossibility based on the lack of a vote of all unit owners on the deck expansions. She alludes to the following colloquy that took place before the plaintiff's first witness took the stand at trial:

"The Court: If I understand you, you don't want to have to present evidence on [the plaintiff's] ability to enter into these types of contracts.

"[The Plaintiff's Counsel]: I don't believe it has to. I think the stipulation and the exhibits marked are all now full exhibits.

"The Court: What you see is separate from the enforceability of this contract.

"[The Plaintiff's Counsel]: I do.

"The Court: This particular contract.

"[The Plaintiff's Counsel]: I do. Whether or not that contract is void as illegal, certainly that's an area coun-

sel has a right to explore.

"The Court: Do you have an objection to that?

"[The Defendant's Counsel]: Yes, Your Honor. I have no objection as far as the presumption that [the plaintiff] has the ability to enter into contracts, I would agree with brother counsel.

"The Court: That makes sense to me."

This colloquy, as well as a review of the trial transcript in its entirety, indicates that the court was justified in denying the defendant's motion for reargument and reconsideration. Contrary to the defendant's argument, we are persuaded that the court reasonably could have concluded that she had waived any impossibility or illegality defense related to the plaintiff's ability to enter into contracts or her ability to expand her deck onto common or limited common elements without a vote of the other unit owners. See *Durkin Village Plainville, LLC* v. *Cunningham*, supra, 97 Conn. App. 655. Not only are we persuaded that the court properly acted within its discretion in concluding that the defendant waived that defense, but we also note that she failed to raise it distinctly to the court at other points in the proceedings, namely, in her special defenses, pretrial motions, and trial memoranda.[11] Further, we note that the defendant did not proffer any evidence at trial regarding what the declaration required with respect to deck expansion and how the plaintiff may have acted in derogation of it. The defendant's motion for reargument and reconsideration, filed by an attorney other than the attorney who represented her during the trial, is a clear example of an attempt to have the proverbial "second bite of the apple," and we reject it. Accordingly, we conclude that the court did not abuse its discretion by denying the defendant's motion for reargument and reconsideration.

B

The defendant also argues that the court committed plain error by concluding that she had waived the impossibility defense related to the lack of a vote of all unit owners to expand their decks. Specifically, the defendant argues that the court committed plain error by only addressing a single aspect of the defendant's illegality defense. The defendant claims that the court improperly confined its analysis to whether the deck expansion contract was illegal because of zoning deficiencies, without addressing whether the defendant had a viable impossibility defense as a result of the lack of a vote of all condominium unit owners. The plaintiff argues that there was no plain error because, through her answer and her objection to the plaintiff's motion for summary judgment, the defendant confined the court's analysis to her illegality defense as it related to the contract's noncompliance with Enfield's zoning regulations. We agree with the plaintiff and conclude

that the court did not commit plain error.

"The plain error doctrine, which is codified in Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." (Internal quotation marks omitted.) *State* v. *Diaz*, 302 Conn. 93, 101, 25 A.3d 594 (2011). This doctrine is premised on policy concerns, and it is only available in situations where "the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id. An appellant seeking application of plain error doctrine must: (1) establish that the trial court's claimed error was so clear and obvious that the court's ruling should be reversed; and (2) show that the "consequences of the error are *so grievous* as to be fundamentally unfair or manifestly unjust." (Emphasis added; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 205, 982 A.2d 620 (2009); see *State* v. *Coward*, 292 Conn. 296, 306–307, 972 A.2d 691 (2009); *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005).

The defendant attempts to couch her argument that the court erred—by finding that she had waived her impossibility defense at trial—in terms of plain error, yet her argument does not necessitate the extraordinary remedy's application under these circumstances. Plain error doctrine "is not . . . a rule of reviewability. It is a rule of reversibility." (Internal quotation marks omitted.) *State* v. *Diaz*, supra, 302 Conn. 101; *Crawford* v. *Commissioner of Correction*, supra, 294 Conn. 204. Although the defendant, for the first time in her motion for reargument and reconsideration and again in her appellate brief, framed the deck expansion contract's performance as being part of her illegality defense because such performance was carried out without first obtaining other unit owners' approval, she nonetheless argues that the court committed plain error insofar as it determined that these issues were part of an *impossibility defense* that had been waived. Both claims, however, are premised on the same lack of approval of the deck expansions by a vote of all the unit owners in the condominium complex. We conclude that, under the circumstances of the present case, the defendant's challenge—based on the court's reasonable determination of what issues properly were before it for its consideration—does not give rise to plain error concerns. Additionally, because we have concluded in part I A of this opinion that the court properly declined to consider a claim of impossibility that was not properly before it, we readily reject a claim of plain error related to that defense.

C

Next, the defendant claims that the court improperly failed to address several arguments that were integral to her claim that it was impossible for her to perform under the dock expansion contract. The defendant argues, for the first time in her appellate brief that: (1) the court awarded the plaintiff fines for her nonperformance as of October 6, 2011, despite the fact that the special use permit allowing the construction of the privacy wall had not been recorded with the Enfield town clerk's office until February 1, 2012;[12] (2) the privacy wall specifications called for by the plaintiff and the contract were adjusted several times after October 6, 2011, while the defendant was being fined for not building the wall;[13] (3) the plaintiff built a freestanding privacy wall next to unit 92's deck on July 31, 2012, but still continued to fine the defendant after that date; and (4) neither the defendant nor the plaintiff had an exclusive ownership interest or right to use the property, upon which unit 92's deck and accompanying privacy wall were to be constructed, without prior approval from other unit owners.[14]

Although the defendant casts her arguments regarding this claim in terms of her alleged "impossibility" defense, we conclude that this claim pertains to damages and not to contract performance. We interpret the court's decision in denying the defendant's motion for reargument and reconsideration as being dispositive on this issue. Although the defendant briefly referred to the issue of damages in her objection to the plaintiff's motion for summary judgment and in her pretrial memorandum, she failed to offer sufficient evidence to alert the court that she was disputing damages stemming from the deck expansion contract. Aside from exhibits and her counsel asking several questions during cross-examination of the plaintiff's witnesses about the dates when the plaintiff began fining the defendant and when the special use permit for the privacy wall was recorded with the Enfield town clerk, the defendant did not apprise the court of her specific argument that she was disputing the plaintiff's claim for damages.[15] Further, in her motion for reargument and reconsideration, the defendant only focused her impossibility and illegality claims on her lack of legal authority to construct a privacy wall under the contract *because of her not having prior approval of other unit owners*. The defendant did not raise any arguments about "impossibility" of her performance due to changing specifications, the plaintiff's construction of a freestanding privacy wall, or the commencement date of the fines. On the basis of the court's decision and its denial of the defendant's motion for reargument and reconsideration, it is clear that the court considered the defendant's defense to be limited to the legality of the contract in light of the Enfield zoning regulations.

On the basis of our review of the record, we agree

with court and, accordingly, decline to review the merits of her claim concerning the proper award of damages in this case. "It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level . . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court . . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked . . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim— would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Nelson* v. *Tradewind Aviation, LLC*, 155 Conn. App. 519, 535, 111 A.3d 887, cert. denied, 316 Conn. 918, 113 A.3d 1016 (2015).

II

The defendant also takes issue with the court's ruling that the initially illegal deck expansion contract subsequently could be rendered legal and enforceable. The plaintiff argues that the defendant's illegality claim lacks merit because, although the deck expansion contract's requirement of a privacy wall on unit 92's deck was not entirely compliant with Enfield's zoning regulations, the plaintiff could have obtained a variance, and it eventually did obtain a special use permit from the commission, both of which cured any alleged illegality resulting from noncompliance with the zoning regulations. We agree with the plaintiff and conclude that the court did not err in determining that the deck expansion contract was legal and enforceable.

We begin by setting forth the appropriate standard of review for the defendant's claim. A trial court's decision as to whether a contract is illegal and unenforceable involves a question of law which entails our application of plenary review. *Parente* v. *Pirozzoli*, 87 Conn. App. 235, 245, 866 A.2d 629 (2005).

Contracts that are illegal may defy public policy, in which case they are void and unenforceable. *Reardon* v. *Windswept Farm, LLC*, 280 Conn. 153, 154–55, 159, 905 A.2d 1156 (2006); *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 326–27, 335–36, 885 A.2d 734 (2005); *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 231, 635 A.2d 798 (1994). The question of "[w]hether a contract is enforceable or illegal is a question . . . to be determined from all the facts and circumstances of each case. Similarly . . . the question [of] whether a contract is against public policy is [a] question of law dependent on the circumstances of the particular case . . . ." (Internal quotation marks omitted.) *Parente* v. *Pirozzoli*, supra, 87 Conn. App. 245. "As a general rule,

a court will [not] lend its assistance in any way toward carrying out the terms of a contract, the *inherent purpose* of which is to violate the law . . . ." (Emphasis in original; internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 807, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998).

In *Dowling*, our Supreme Court examined the enforceability of an employment contract between an illegal alien and her employer and specifically whether the agreement constituted a "contract of service" making the illegal alien an "employee" under the Workers' Compensation Act, General Statutes § 31-275 et seq. *Dowling* v. *Slotnik*, supra, 244 Conn. 806–13. Although much of the court's opinion dealt with jurisdiction and statutory interpretation issues, the court devoted significant discussion to the employer's claim that the employment contract was illegal and unenforceable because it had been tainted by the plaintiff's illegal alien status. Id. Most notably for our purposes, the court opined in dicta that "it is in order to effectuate an underlying public policy, rather than to sanction a party seeking to enforce an 'illegal' contract, that courts refuse to lend assistance to those who have contributed to the illegality that taints the contract." Id., 808. In concluding that the employment agreement between the plaintiff and her employer was not illegal as a matter of law merely because of the plaintiff's status as an illegal alien, the court weighed broader public policy purposes heavily in its analysis. Id., 790–96.[16]

Our Supreme Court dealt with the issue of whether a new home construction contract was unenforceable because it was noncompliant with the registration, disclosure, and contract language requirements in the New Home Construction Contractors Act (act), General Statutes § 20-417a et seq. *D'Angelo Development & Construction Co.* v. *Cordovano*, 278 Conn. 237, 897 A.2d 81 (2006). In holding that the subject contract was enforceable and not rendered unenforceable merely by virtue of the contractor's failure to abide by several of the act's statutory requirements, the court noted that the underlying purpose of the construction contract at issue was not to violate the law. Id., 242. Rather, the court reasoned, the construction contract was meant to effectuate an "otherwise legal contract." Id. In similar fashion to the plaintiff in the present appeal, the party seeking enforcement of the contract in *D'Angelo Development & Construction Co.*, the contractor, caused a statutory violation in forming the construction contract because it did not know of the act's registration requirement. Id. Upon becoming aware of the registration requirement, the contractor immediately sought such registration in order to comply with the law. Id., 240 n.2, 242. In the present case, the record shows that the plaintiff did not know that the privacy wall had not been approved by the commission at the time that it

contracted with the defendant. Once the plaintiff learned of the discrepancy, it promptly sought a special use permit from the commission to allow it to construct the privacy wall. Thus, we conclude that the purpose undergirding the deck expansion contract and the plaintiff's actions was not to violate Enfield's zoning regulations, but rather to carry out deck expansion projects in the most efficient manner possible.

In a case heavily relied upon by the plaintiff and the defendant, *12 Havemeyer Place Co.*, *LLC* v. *Gordon*, 76 Conn. App. 377, 820 A.2d 299, cert. denied, 264 Conn. 919, 828 A.2d 618 (2003), this court addressed the issue of whether a lease agreement was illegal ab initio and, therefore, unenforceable due to its noncompliance with a site plan's designated requirements. Id., 383. The dispute arose from a lease of parking spaces in an underground parking garage, which was located between two neighboring retail office properties, 60 Arch Street and 71 Arch Street, in Greenwich. Id., 380–81. The original 1980 site plan for the garage designated specific amounts of the garage's parking spaces for each property, but a purchaser that bought both properties in 1988 eventually sold 60 Arch Street to another party and leased a different amount of parking spaces to the property than was designated in the site plan. Following a subsequent lease of the parking spaces between two successors, the plaintiff lessor brought a summary process action against the defendant lessee and argued that the lease was invalid because of the deviation from the original site plan. Id., 381–82.[17] The trial court concluded that the lease was enforceable.

Following an appeal, this court held that the lease was enforceable and did not undercut public policy considerations merely because it did not comply with the original site plan. Id., 392. We noted that the relevant inquiry with respect to the lease's claimed illegality not only concerned the lease's purpose, but also the violated regulation's dimensions. Id., 389. Thus, in the context of the case, we framed this aspect of the inquiry as being "whether the site plan . . . is a zoning regulation involving the common good or a regulation that has as its overriding purpose a private goal that does not contravene the common good." Id. Given that backdrop, we then considered the nature of zoning laws and violations of them, keeping in mind the issue of whether such violations contravened the common good. Id., 389–91. We stated that "[p]arties may bind themselves to a contract that calls on its face for a use of property that violates the zoning laws because, due to the possibility of obtaining a variance, such a bargain is not against public policy or public morals." (Internal quotation marks omitted.) Id., 390–91. Even though the zoning board of appeals denied the plaintiff's variance, we concluded that the possibility that the variance could be obtained at all cured any of the lease agreement's alleged zoning defects. Id., 391–92.

In light of judicial precedent and the facts in the record, we conclude that the deck expansion contract in the present case was not illegal such that it was void as against public policy. In a similar way to the lease agreement at issue in *12 Havemeyer Place Co.*, *LLC*, the deck expansion contract's purpose was not to violate Enfield's zoning regulations, and it certainly was not to contravene the common good. Rather, the evidence shows that the contract's zoning deviations arose from a mere administrative oversight committed by the plaintiff. Further, the evidence shows that the plaintiff remedied the deck expansion contract's zoning noncompliance upon becoming aware of it. We also are persuaded that the severity of the zoning discrepancy at issue here is not of sufficient magnitude to render the contract void on public policy grounds. See id., 392 ("[o]n the particular facts of this case, the plaintiff is not entitled to possession because we hold that the violation of the zoning laws with regard to the parking required by the site plan *was not sufficient* to render the [contract] illegal as against public policy" [emphasis added]); cf. *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 723, 682 A.2d 1026 ("restrictions imposed by governmental authority, such as zoning regulations, are not a defect affecting marketable title to property"), cert. denied, 239 Conn. 931, 683 A.2d 397 (1996); *Voorheesville Rod & Gun Club* v. *E.W. Tompkins Co.*, 82 N.Y.2d 564, 572, 626 N.E.2d 917, 606 N.Y.S.2d 132 (1993) (real property vendor's failure to seek subdivision approval before conveying land did not render title to land unmarketable under municipal regulations).

We are mindful of the defendant's reiteration of her argument in the context of this claim, that the court also erred by not addressing whether the deck expansion contract was illegal for reasons other than it's noncompliance with the zoning regulations. As we concluded in part I of this opinion, the court did not err by failing to address other claims regarding the illegality of the deck expansion contract or the impossibility of its performance in its memorandum of decision because the defendant did not distinctly raise those other claims or furnish the court with sufficient evidence of them. Accordingly, we conclude that the court did not err by concluding that the deck expansion contract was legal and enforceable.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] Robert E. Johnston is also named as a defendant in the present case. He is a nonunit owner occupant of the condominium that is the subject of this dispute, to which Carol A. Johnston holds title. Mortgage Electronic Registration Systems, Inc., as nominee for USAA Federal Savings Bank, is also named as a defendant, but it is not a party to this appeal. Accordingly, for purposes of this opinion, we refer to Carol A. Johnston as the defendant.

[2] The plaintiff is a common interest community unit owners' association whose common interest community is located in Enfield.

[3] Specifically, at this August 31, 2011 meeting, the board unanimously passed a motion "to begin a fine of $25 per day until the accumulated total

is equal to 3 months of common fees and if unpaid, turn to collection and pursue getting a court order . . . for the homeowner to adhere to the original agreement and specifications."

[4] The plaintiff also indicated in the September 20, 2011 letter that it could bring a legal action against the defendant to foreclose its statutory lien securing any of her unpaid fines if she decided not to comply with the plaintiff's demands.

[5] General Statutes § 47-258 provides in relevant part: "(a) The association has a statutory lien on a unit for any assessment attributable to that unit or fines imposed against its unit owner. Unless the declaration otherwise provides, reasonable attorneys' fees and costs, other fees, charges, late charges, fines and interest charged pursuant to subdivisions (10), (11) and (12) of subsection (a) of section 47-244 and any other sums due to the association under the declaration, this chapter, or as a result of an administrative, arbitration, mediation or judicial decision, are enforceable in the same manner as unpaid assessments under this section. . . . (g) A judgment or decree in any action brought under this section shall include costs and reasonable attorney's fees for the prevailing party. . . . (j) The association's lien may be foreclosed in like manner as a mortgage on real property."

[6] The plaintiff eventually withdrew the second count from its complaint.

[7] In her answer, the defendant pleaded only two special defenses, illegality due to the contract's violating Enfield zoning laws, and coercion. The defendant did not make any mention of her impossibility claim.

[8] In her pretrial memorandum, the defendant stated that there were three issues in the matter: (1) whether the deck expansion contract was valid; (2) whether the defendant violated the contract; and (3) whether the Enfield zoning regulations supersede the plaintiff's bylaws and the declaration. Further, the defendant made the following claims of law: "The Defendant believes that the contract is illegal based upon the unequal bargaining positions of the parties. The Plaintiff had no authority to impose terms and conditions on the Defendant inconsistent with the approved plans of the Condominium Association by the Town of Enfield. The Plaintiff cannot unilaterally change the terms and conditions approved by the Town of Enfield. The Plaintiff committed a fraud upon the Defendant by the misrepresentations of the requirements of the deck replacement or expansion."

[9] In her objection to the plaintiff's motion for summary judgment, although the defendant again had a chance to argue that there were material issues of fact as to whether it was impossible for her to perform under the deck expansion contract, she failed to do so distinctly.

[10] During trial, the defendant's counsel put on only one witness, Robert E. Johnston, who only testified, more or less, about when the defendant entered into the deck expansion contract with the plaintiff, what the dimensions of unit 92's deck were before and after the expansion, and who carried out the construction of the deck. As for the plaintiff's witnesses, who were the property manager and the secretary of the board, the defendant's counsel could have asked questions about the need for all unit owners to vote on and to approve expansion of unit 92's deck onto common elements, yet he failed to do so. Instead, the defendant's counsel focused his cross-examination questions on the zoning issues that arose with the deck expansion contract and the requirements of the contract itself.

[11] We further note that the defendant did not set forth this claim as a special defense. "In an action by a corporation, foreign or domestic, founded upon any contract, express or implied, the defendant shall not, under a general denial, be permitted to dispute, but shall be deemed to admit, the capacity of the plaintiff to make such contract." Practice Book § 10-49.

[12] The defendant notes that the special use permit was not legally effective until a certified copy of it was recorded in the Enfield land records pursuant to General Statutes § 8-3d. Thus, the defendant asserts that the plaintiff's fines against her were unlawful because they were based on the defendant's failure to construct a privacy wall that was not able to be built legally until several months after the fines began to accrue.

[13] The defendant also notes that the civil action that she filed seeking a declaratory judgment regarding the deck expansion contract's enforceability; see *Johnston* v. *Carriage House I-Enfield Assn.*, *Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-11-6026612-S; was still pending during the time that she was being fined for not abiding by the contract's requirements, which, according to her, further justified her argument that it was impossible for her to build a privacy wall pursuant to the contract.

[14] We reject the fourth component of this claim because of our conclusion in part I A of this opinion.

[15] Moreover, even if we were to consider the claim on its merits, evidence in the record readily demonstrates that the defendant's claim lacks merit. Specifically, the evidence shows that despite the fact that the defendant learned that the commission had not approved a privacy wall for unit 92's deck, she chose to breach the contract by obtaining a building permit without a privacy wall and commencing in building the deck without waiting for the plaintiff to obtain a permit allowing the wall. Further, the evidence shows that before the plaintiff began fining the defendant on October 6, 2011, the plaintiff gave the defendant the option of either returning unit 92's deck to its original state or constructing the privacy wall. The defendant chose to do neither and now claims that she should not have been fined until the permit allowing the privacy wall was recorded with the Enfield town clerk's office. We disagree.

[16] Specifically, the court not only examined the policy rationale behind the Workers' Compensation Act; *Dowling* v. *Slotnik*, supra, 244 Conn. 799–801, but it also discussed the rationale behind the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1101 et seq. (2012), which also pertained to the parties' case. Id., 795–97. The court primarily focused its analysis with respect to the latter statutory scheme on 8 U.S.C. § 1324a (a), which makes it unlawful knowingly to employ illegal aliens. After acknowledging that the Immigration Reform and Control Act's primary purpose is to punish employers that knowingly hire illegal immigrants, the court ultimately concluded that deeming the disputed employment contract enforceable would further the act's purpose because it would punish the employer who hired the illegal alien by requiring it to pay into the workers' compensation fund. Id., 810–13.

[17] Specifically, the defendant filed a separate action from the one on appeal, in which he sought injunctive relief, damages, and a declaratory judgment that the lease was valid and enforceable. *12 Havemeyer Place Co.*, *LLC* v. *Gordon*, supra, 76 Conn. App. 382. The plaintiff filed a counterclaim pleading that the defendant was liable for tortious interference with its leases with its own tenants in the 60 Arch Street building. Id. The defendant subsequently withdrew his application for a temporary restraining order against the plaintiff in exchange for its agreement to seek a variance with the town of Greenwich. Id. The plaintiff did seek a variance, but the Greenwich Zoning Board of Appeals denied it, concluding that the plaintiff had not demonstrated the requisite hardship. Id. A Greenwich zoning enforcement officer then cited the plaintiff for a violation of a municipal zoning ordinance because of its reduction of on-site parking spaces for 60 Arch Street from forty-eight spaces to forty-two spaces, and he ordered it to restore the six parking spots as being for use by 60 Arch Street. Id. At this point, the plaintiff served the defendant with a notice to quit and brought a summary process action against him for immediate possession of the sixteen parking spaces that had been subject to the 1988 lease. Id., 382–83. This summary process action became the subject of the appeal.

———————————————————